**In re BRIDGESTONE/FIRESTONE, INC., Relator.**

No. 01–1165.

Supreme Court of Texas.

Argued Sept. 25, 2002.

Decided May 22, 2003.

Marie R. Yeates, Knox D. Nunnally, Catherine B. Smith, Vinson & Elkins, L.L.P., Houston, Debora B. Alsup, Thompson & Knight, L.L.P., Austin, C. Vernon Hartline, Jr., Scott G. Edwards, Hartline, Dacus, Barger, Dreyer & Kern, L.L.P., for Relator.

Robert J. Patterson, Patterson & Associates, Corpus Christi, Wendell Phillip Martens, Leon R. Russell, Law Office of Leon R. Russell, Dallas, N. Carlene Rhodes Lewis, Goforth Lewis LLP, Houston, C. Tab Turner, Turner & Associates, N. Little Rock, AR, Robert E. Ammons, Stevenson St. John & Ammons, Houston, Paula A. Wyatt, Wyatt & Wyatt, Corpus Christi, Michael L. Phifer, Law Office of Michael L. Phifer, Richard Warren Mithoff, Mithoff & Jacks, Houston, Vincent L. Marable, III, Paul Webb, P.C., Wharton, Catherine W. Smith, Law Office of Ramon Garcia, Edinburg, David G. Matthiesen, Matthiesen Chase & Erwin, Houston, Frank L. Branson, Law Office of Frank L. Branson, Dallas, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice JEFFERSON and Justice SMITH joined.

The plaintiffs in some 150 cases alleging Firestone tire tread separations and Ford Explorer roll-overs seek discovery of Firestone's skim stock formulas, which they concede in this Court are trade secrets. Although the plaintiffs contend that they

---

**12.** Tex.R.App. P. 59.1.

can prove their tires were defective without knowing the skim stock formulas, they nevertheless argue that disclosure of the formulas is necessary for a fair adjudication of their claims. The pretrial judge assigned to the cases agreed, but in this original mandamus proceeding we conclude that the plaintiffs have failed to show, as they acknowledge they must, how access to Firestone's skim stock formulas is necessary for a fair adjudication of their claims. Accordingly, we conditionally grant mandamus relief.

A large number of similar cases have been filed in Texas, as in other states, alleging that certain Firestone tires are defective. In seven of nine administrative judicial regions in this State, the regional presiding judge assigned a pretrial judge for the cases in the region.[1] These seven pretrial judges must consult with each other in ruling on pretrial matters.[2] The original proceeding now before us involves a challenge to one such ruling by one of the pretrial judges in which all have joined. Relator, Bridgestone/Firestone, Inc., is a defendant in the cases before the pretrial judges. The real parties in interest are the plaintiffs in those cases.

The plaintiffs claim that "[t]he defect with the Firestone tires is a skim stock deficiency which causes a lack of adhesion between the steel belts in the tires and separation of the tread and steel belts." Skim stock is a specially formulated rubber compound that coats the steel belts in a steel-belted radial tire and through vulcanization holds them together. In the pending cases, the plaintiffs requested discovery of the formulas and specifications for the skim stock Firestone used to produce ATX, ATXII, and Wilderness AT tires at its Decatur plant. Firestone responded that two skim stock formulas were used in manufacturing the specified tires, that both were used at all its plants, that one was still in use, and that its skim stock formulas are trade secrets privileged from discovery under Rule 507 of the Texas Rules of Evidence.[3] Firestone presented evidence that it goes to great lengths to guard its skim stock formulas from its competitors, and that skim stock formulas are regarded as trade secrets throughout the tire manufacturing industry. Because skim stock is chemically altered by vulcanization, its components cannot be determined from the finished tire. The plaintiffs countered that the skim stock formulas they sought could not be of interest to Firestone's competitors, given the problems Firestone has had with its tires. Firestone answered that disclosing the formulas would reveal the approach Firestone has taken to engineering its tires.

After a hearing, the pretrial judge found that Firestone had established its trade secret privilege. The burden then fell upon the plaintiffs to establish that the information is necessary or essential for a fair adjudication of their claims.[4] The pretrial judge found that the plaintiffs had met this burden and ordered Firestone to produce the requested information. The

1. *See* Tex.R. Jud. Admin. 11.

2. *Id.* 11.3 (c).

3. Tex.R. Evid. 507 ("A person has a privilege, which may be claimed by the person or the person's agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice. When disclosure is directed, the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require.").

4. *In re Continental Gen. Tire, Inc.,* 979 S.W.2d 609, 610–613 (Tex.1998).

judge ordered that the information be provided only to three attorneys for the plaintiffs named in the order and one expert to be designated by the Texas Plaintiffs' Steering Committee. The judge ordered that the information not be disseminated further and that it be provided on paper that cannot be photocopied. Firestone sought relief by mandamus from the court of appeals, which that court denied. Firestone then petitioned this Court for relief.

We have previously considered whether a tire manufacturer's skim stock formula is privileged from discovery in *In re Continental General Tire, Inc.*[5] There, as here, the plaintiffs alleged a tire tread separation caused by a defect in the skim stock. In both cases the plaintiffs conceded in this Court that a skim stock formula is a trade secret.[6] In *Continental General Tire* we held that for the plaintiffs to obtain discovery they were required to establish that the information was necessary or essential to the fair adjudication of the case, weighing the requesting party's need for the information against the potential of harm to the resisting party from disclosure.[7] We concluded that the plaintiffs had failed to make this showing. We noted that the uncontroverted evidence from the defendant's expert was that "the physical properties of a tire cannot be determined from an examination of a compound formula; rather, the finished tire itself must be tested."[8] Thus, there was no evidence that a defect in skim stock could be proved using the formula for its components. We also noted that the plaintiffs had no other manufacturer's formula to compare to the defendant's formula.[9]

One could not tell from the formula itself whether it was better or worse than any other formula. Finally, we stated that the plaintiffs had offered no evidentiary support for their theory that the skim stock formula would show whether sulfur found on the defective tire was a component of the skim stock or had been improperly introduced during manufacture.[10]

We did not attempt to state conclusively what would or would not be considered necessary for a fair adjudication, indicating instead that the application of the test would depend on the circumstances presented.[11] In the present case, Firestone argues that the test should be applied to preclude discovery of trade secret information unless the requesting party cannot prevail without it. While it would certainly be unfair to allow a party to prevail solely by withholding such information, our decision in *Continental General Tire* cannot be read so narrowly. It may be theoretically possible for a party to prevail without access to trade secret information and yet be unfair to put him to much weaker proof without the information. Obviously, the degree to which information is necessary in a case depends on the nature of the information and the context of the case.

While it is difficult to be more specific about the test to be applied, except by demonstrating how it is properly applied in particular cases, we can say with certainty that the test cannot be satisfied merely by general assertions of unfairness. The words "fair" and "unfair" are prone to indefinite use. Just as a party who claims the trade secret privilege cannot do so

---

5. *Id.*

6. *Id.* at 615.

7. *Id.* at 609, 610–613.

8. *Id.* at 615.

9. *Id.*

10. *Id.*

11. *Id.* at 613.

generally but must provide detailed information in support of the claim, so a party seeking such information cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat. The plaintiffs' evidence and argument before us fall far short of this standard.

The plaintiffs do not challenge Firestone's assertion that a tire's physical properties can be tested without knowing the recipe for the skim stock compound. Indeed, the plaintiffs tell us that even without the skim stock formulas they have "presented evidence of a serious, pervasive deficiency with the skim stock manufactured by the Decatur plant". This is the same kind of evidence, the parties agree, that has been used in countless numbers of defective tire cases. This strongly suggests that the plaintiffs will not be hampered in their proof by not knowing Firestone's skim stock formulas. The plaintiffs concede that skim stock components are chemically changed in the vulcanization and curing process so that it may not be possible to know from the recipe of components how the finished tire will perform. In other words, tests on a finished tire are more probative of defect than its skim stock formula would be. The plaintiffs also acknowledge that, like the plaintiffs in *Continental General Tire*, they have no other skim stock formulas to compare. Indeed, neither Firestone nor the plaintiffs are able to point to a single case, other than those before us, in which a court has ordered disclosure of a skim stock formula.

Plaintiffs offered in support of their discovery request the affidavits of two experts, who both stated that "[t]he best way to be able to determine what is supposed to be in the tire is to know the compounds,

formulas, and specifications for the tire". But this statement, which we assume to be true, is virtually tautological: the best way to determine what ingredients are supposed to be in a tire is to know what ingredients are supposed to be in a tire. The experts' statement does not indicate whether or how knowing a tire's specified ingredients will show whether the finished tire was defective. This is especially problematic when there is no question that a tire's ingredients are altered during the curing process. Moreover, the experts assert without knowing the skim stock formulas that there is proof the tires were defective. The plaintiffs' experts' assertions that the defective tires can be traced to one of several Firestone plants strongly suggest that the manufacturing process, and not the skim stock formulas that were used to manufacture the same tires at all plants, is the source of any defect.

The plaintiffs argue that there are cases in which the allegedly defective tires have been destroyed and therefore cannot be tested. But the plaintiffs have offered no evidence relating to such cases, nor have they shown that their proof of defect is weaker in any such cases. Even if they had, the plaintiffs have not explained how knowledge of the skim stock formula can be used to prove defect.

The plaintiffs have alleged that (i) skim stock contamination may have caused tread separations; (ii) Firestone may have used over-aged rubber compounds in its Decatur plant; (iii) the defective tires had a high sulfur content; (iv) excessive heat in the manufacturing process or oxidative aging made the rubber surfaces of Decatur tires more susceptible to fracture and tear; and (v) Firestone used inferior rubber compounds. The plaintiffs have not shown how knowledge of Firestone's skim stock formula is even linked to these allegations,

let alone necessary to their fair adjudication.

The plaintiffs contend that they need the skim stock formula to rebut Firestone's contention that tread separations were caused by factors other than skim stock deficiencies. Again, however, the plaintiffs have not shown how they will be able to trace a tire defect to the formula, especially when they have no other formulas to compare with Firestone's. The plaintiffs argue that Firestone may point to their lack of knowledge of the skim stock formula to undercut their arguments at trial. Of course, it would be unfair for Firestone to argue that a plaintiff's case is impaired by lack of evidence that Firestone has itself withheld, but Firestone strenuously asserts that it has made no such argument and will not do so. If Firestone were to attempt to take advantage of the plaintiffs in this way, the plaintiffs would have a much stronger argument for discovery of the skim stock formula, but this is merely a possibility of unfairness that can be addressed if it ever materializes. The mere possibility of unfairness is not enough to warrant disclosure of the information.

Finally, the plaintiffs argue that discovery of Firestone's skim stock formulas is necessary to protect the general public's health and safety, given the extent of the problems with its tires. But the *number* of complaints does not show whether discovery of skim stock formulas is necessary for their fair adjudication when the plaintiffs contend there is already ample evidence of defect; if anything, the large number of claims suggests some defect irrespective of skim stock formulas.

In sum, the plaintiffs' evidence of unfairness in this case is essentially no different than the evidence in *Continental General*

*Tire*. Accordingly, for the same reasons we direct respondent Pretrial Judge Michael Mayes to vacate his orders of September 17, 2001, and September 20, 2001, regarding skim stock discovery. We are confident he will promptly comply. Our writ will issue only if he fails to do so.

Justice O'NEILL issued a concurring opinion, in which Justice SCHNEIDER joined.

Justice WAINWRIGHT did not participate in the decision.

Justice O'NEILL filed a concurring opinion, in which Justice SCHNEIDER joined.

The Court directs the seven designated pretrial judges who ordered discovery of the skim-stock formula used at Firestone's Decatur plant to vacate their order because "the plaintiffs' evidence of unfairness . . . is essentially no different than the evidence in *Continental General Tire*." 979 S.W.2d at 615. While I agree that the plaintiffs in this case did not meet their burden to establish that the skim-stock formula's disclosure was necessary to fairly adjudicate their claims and that Firestone is entitled to mandamus relief, I cannot join the Court's opinion because it fails to fairly treat the plaintiffs' contentions and offers little useful guidance to the bench and bar. Accordingly, I concur.

**I**

This case presents the Court with the opportunity to build on the foundation laid in *Continental General Tire*, in which we first described how trial courts should apply Rule 507 of the Rules of Evidence.[1] There, we held that

---

1. Rule 507 provides

   A person has a privilege, which may be claimed by the person or the person's agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the

the party resisting discovery must establish that the information is a trade secret. The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims. If the requesting party meets this burden, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order. In each circumstance, the trial court must weigh the degree of the requesting party's need for the information with the potential harm of disclosure to the resisting party.

*In re Cont'l Gen. Tire, Inc.,* 979 S.W.2d 609, 613 (Tex.1998) (footnote omitted). The Court should use the case before us to expand on that decision and further explain when discovery of a trade secret is "necessary for a fair adjudication." I recognize that the concept of "necessity" in this context must be somewhat fluid; its application will vary depending upon the circumstances presented. But determining what evidence is necessary for a fair adjudication should be more than ad hoc, as the Court's opinion suggests. Courts in other jurisdictions have provided guidance on the subject, and some general principles can be distilled from those decisions.

Any analysis of the necessity of trade secret information to a fair adjudication must begin by examining the relationship between the trade secret information sought and the material elements of the parties' claims and defenses. *See Bridgestone/Firestone, Inc. v. Superior Court,* 7 Cal.App.4th 1384, 9 Cal.Rptr.2d 709, 714–15 (1992); *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 107 F.R.D. 288, 289 (D.Del. 1985).[2] In the often-cited *Coca–Cola Bottling Co.* case, for example, the district court considered whether to allow discovery of the formula for Coca–Cola, "one of the best-kept trade secrets in the world." *Coca–Cola Bottling Co.,* 107 F.R.D. at 289. The plaintiffs, various bottlers, had sued Coca–Cola alleging that the company was contractually obligated to sell them syrup for the newly introduced diet Coke under the same terms as their contracts covering regular Coke syrup. The bottlers essentially complained that the two products were so similar that the syrup for diet Coke was "bottler's syrup" within their contracts' terms, while Coca–Cola contended that Coke and diet Coke were separate and distinct products. *Id.* at 296. The court noted, first, that the formula was relevant to the issue of product identity, "one of the primary issues" in the case. *Id.* Production of the formula was necessary for a fair adjudication, the court reasoned, to allow the plaintiffs "to address the product identity issue by comparing the ingredients of the various soft drinks involved," and to allow them to "respond to the assertions of defendant's experts that diet Coke and Coca–Cola are two products." *Id.* at 298. Plaintiffs could not fully cross-examine Coca–Cola's experts without the formula, nor could they prove product identity without disclosure of the secret ingredients. *Id.* at 297–98. Furthermore, the information was available from no other source, and no adequate substitute existed. *Id.* at 298.

---

allowance of the privilege will not tend to conceal fraud or otherwise work injustice. When disclosure is directed, the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require.
TEX.R. EVID. 507.

**2.** We noted in *Continental General Tire* that California had adopted a rule based on the same Supreme Court Standard 508 that forms the basis of our Rule 507. *In re Cont'l Gen. Tire,* 979 S.W.2d at 610–11. The federal courts' treatment of trade secrets is consistent with that standard. *Id.* at 611–12.

Similarly, in *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 338–39 (N.D.Cal.1995), a district court allowed Packard Bell to discover information about another computer company's use of recycled components in computers marketed as "new." Packard Bell defended its use of recycled components on the ground that the practice was standard within the industry. The court reasoned that other manufacturers were not likely to voluntarily disclose information about a potentially controversial practice. *Id.* Thus, unless the court ordered disclosure, Packard Bell's expert testimony about industry practice would be based on nothing "more than mere surmise." *Id.* Likewise, in a patent infringement case the Federal Circuit affirmed a district court order that denied discovery of the alleged infringer's confidential sales data because the party seeking discovery already had access to nonconfidential sales data that would serve the same purpose. *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 742–43 (Fed.Cir. 1987).

We can derive several guiding principles from these cases. First, trade secret information is generally discoverable when not allowing discovery would significantly impair a party's ability to establish or rebut a material element of a claim or defense. A party's ability is significantly impaired when the information is unavailable from any other source and no adequate alternative means of proof exist. Discovery is also necessary when the party seeking trade secret information could not knowledgeably cross-examine opposing witnesses without it, or when the party's experts would be unable to formulate opinions supported by an adequate factual foundation. On the other hand, information that is merely cumulative is not necessary for a fair adjudication.

## II

Applying these principles, I agree with the Court that the plaintiffs have not demonstrated that disclosure of Firestone's skim-stock formula is necessary for a fair adjudication of the claims and defenses in this case. I disagree, however, that the evidence in this case "is essentially no different than the evidence in *Continental General Tire*." 979 S.W.2d at 614. The plaintiffs here assert, among other claims, that Firestone's tires were defectively manufactured.[3] In order to establish a manufacturing defect, the plaintiffs must prove that "the finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 434 (Tex.1997). Unlike in *Continental General Tire*, where we specifically left the question open because plaintiffs had provided no evidence to support the theory, 979 S.W.2d at 615, the plaintiffs here offered evidence attempting to establish that disclosure of Firestone's skim-stock formula was necessary to prove that the finished tires deviate from specifications, either because of skim-stock contamination during the manufacturing process or because ingredients were used in proportions that deviate from the formula. Robert Ochs, a former Michelin engineer with extensive experi-

---

**3.** Although the plaintiffs also apparently assert defective design claims, the trial court's comments at the hearing on Firestone's motion to quash indicate that the trial court considered the trade secret information necessary to their manufacturing defect claim:

"One thing that—I'm reading as you're talking, and it just jumps out at me, is how—the plaintiffs make the argument here that ... how could they ever make an argument of manufacture defect if they don't really know what the design intent was in the first place?"

ence in tire-failure analysis, testified by affidavit:

> I believe there is a rubber compounding problem with the Firestone ATX and Wilderness tires. *I would like to obtain these compound formulas to compare the substances which are supposed to be in the tire against those which are actually found in the tire.* The best way to be able to determine what is supposed to be in the tire is to know the compounds, formulas, and specifications for the tire; *one can then compare the recipe with what is actually in the tire.... The compounds and formulas for the tire components are highly probative and relevant in that they allow for a comparison between the actual, individual substances found in the failed tires and the combinations called for in the manufacturer's formula. While the tire curing process will chemically change some of the ingredients, a comparison can still be made to determine the propriety of the materials actually detected in the cured tire.*

(Emphasis added). The plaintiffs provided a similar affidavit from another engineer, Dennis Carlson. The Court quotes only a fraction of the evidence presented and characterizes it as "tautological." Fairly read, the affidavits offer a compelling necessity for discovery that is not so easily dismissed. But while the plaintiffs here presented a stronger case for disclosure than in *Continental General Tire,* they nevertheless did not establish that disclosure of the skim-stock formula is necessary for a fair adjudication of their manufacturing defect claims.

First, the plaintiffs have not alleged that the skim-stock formula comparison method is necessary, or is even the superior way, to establish their manufacturing defect claim; rather, the plaintiffs have produced evidence that the formula would be "highly probative and relevant." Trade secret information cannot be subject to disclosure based on mere relevance without rendering Rule 507 of the Texas Rules of Evidence meaningless. *Cont'l Gen. Tire,* 979 S.W.2d at 611 (citing *Bridgestone/Firestone,* 9 Cal.Rptr.2d at 712).

Second, although proving that finished tires contain material different from that called for in the skim-stock formula would be one way to prove a manufacturing defect, plaintiffs could also establish a defect by showing that the composition of tires manufactured at Firestone's Decatur plant differed from that of tires manufactured at its other plants. *See Bridgestone/Firestone,* 9 Cal.Rptr.2d at 714 (citing *Barker v. Lull Eng'g Co.,* 20 Cal.3d 413, 143 Cal. Rptr. 225, 573 P.2d 443, 454 (1978)). Moreover, the record contains evidence that Ford, without access to the skim-stock formula, was able to determine that the manufacturing process at Firestone's Decatur plant produced flaws that contributed to tire failures. The plaintiffs also have evidence from Firestone's own internal investigation of the tire failures that the manufacturing process at the Decatur plant allowed contamination that caused reduced cohesion between the tire's components. Finally, Firestone's motion to reconsider the trial court's discovery order specifically admitted that the manufacturing process at the Decatur plant resulted in contamination of the skim stock. The plaintiffs did not argue here or in the trial court that the discovery was necessary to fairly adjudicate their defective design claims, or any other claims they have asserted.

### III

For these reasons, I concur in the Court's holding that the plaintiffs did not meet their burden to establish that the skim-stock formula was necessary to fairly

adjudicate their manufacturing defect claim.