IN THE SUPREME COURT OF TEXAS








IN 
THE SUPREME COURT OF TEXAS
 
 

No. 
02-0375

 
 
In Re  Hal G. Kuntz, Relator
 
 

On Petition for Writ of 
Mandamus

 
 
Justice Hecht, joined by Justice Owen, Justice Schneider and Justice Wainwright, concurring.
 
 
I 
agree that Vesta Kuntz is not entitled to have her 
ex-husband, Hal Kuntz, produce letters of recommendation (ALORs@) 
that his employer prepared for its client because he does not have Apossession, 
custody, or control@ 
of the documents within the meaning of Rule 192.3(b) of the Texas Rules of Civil 
Procedure.  But Vesta has not merely sought discovery from the wrong 
person.  She is not entitled to 
production of the LORs because they are privileged 
trade secrets under Rule 507 of the Texas Rules of Evidence and she has not 
established, as she must, that they are essential to the fair adjudication of 
her claims.  So while I join fully 
in the Court=s 
opinion, I would reach the same result for this additional reason.
Hal=s 
employer, CLK Company, L.L.C., evaluates oil and gas prospects for its client, 
McMoRan Oil & Gas, L.L.C. (AMOXY@), 
detailing its findings in letters of recommendation to MOXY.  Vesta and Hal=s 
agreed divorce decree gives Vesta

25% of all overriding royalty interests, if any, from MOXY assigned to [Hal] after the date of divorce that 
results [sic] from projects on which CLK forwarded 
letters of recommendation to MOXY to drill during the 
marriage.


Vesta sued Hal, alleging that he had not paid her what was 
due by this provision. When Hal asserted that the extent of his obligation can 
be determined only by the precise language of each LOR, Vesta requested Hal to 
produce all of the LORs CLK 
sent MOXY during the Kuntzes= 
fifteen-year marriage C 
over 1,700 of them, according to her C 
regardless of whether they pertain to prospects MOXY 
has drilled or will ever drill.  Hal 
responded that the LORs are privileged trade secrets 
and agreed to produce only the LORs pertaining to 
prospects MOXY drilled.  The trial court found that the LORs are privileged trade secrets but ordered Hal to produce 
them, subject to a confidentiality order.


Vesta argues that Hal failed to prove that the LORs are trade secrets because MOXY failed to protect the confidentiality of the LORs and the information they contain.  She cites evidence showing that MOXY shares the information in the LORs with its competitors, subject to confidentiality 
agreements.  She also points out 
that MOXY did not obtain a confidentiality agreement 
from each of its employees, or for that matter from Hal=s 
expert witness before he was shown redacted copies of 155 LORs, and that MOXY lost some of 
the LORs B 
possibly by including them in an inadvertent transfer of thousands of files to 
an outside entity.  Hal, however, 
cites evidence showing MOXY=s 
efforts to protect its trade secrets.  
Information was disclosed only to those competitors solicited as 
potential investors, and then subject to confidentiality agreements and other 
protective measures.  MOXY required CLK to seek 
permission before disclosing the LORs, and MOXY=s 
recent consulting agreements included a confidentiality provision.  Employee agreements, besides including 
non-compete clauses, required compliance with MOXY 
rules and regulations; further, only a limited number of MOXY employees had access to this information, and then, 
only at work.  Hal also argues that 
an inadvertent transfer of LORs to an outsider, even 
if it actually occurred, should not result in a waiver of trade secret 
protection.  At most, Vesta raises subsidiary fact issues about one factor used to 
analyze the existence of a trade secret.[1]  She has not shown that the trial court 
erred in its determination.
Accordingly, 
to obtain discovery of the LORs Vesta must establish that they are Anecessary 
or essential to the fair adjudication of the case,@ 
weighing her need for the information against the harm that may result from 
disclosure.[2]  Vesta must 
Ademonstrate 
with specificity exactly how the lack of the information will impair the 
presentation of the case on the merits to the point that an unjust result is a 
real, rather than a merely possible, threat.@[3]


Vesta does not dispute that MOXY 
will not drill all or even most of the prospects covered by the LORs, and Hal offered evidence that MOXY will drill at most five to fifteen a year.  Hal argues that a LOR should be produced only when MOXY has assigned him an interest or drilled a well, events 
reflected in public filings with the Securities Exchange Commission or the 
Department of Interior=s 
Mineral Management Service.  At that 
point, after a prospect has been developed, no one claims that the information 
in a related LOR remains confidential.  Vesta argues 
that immediate production of all LORs is necessary to 
determine which of them could result in payments to Vesta if MOXY should ever drill 
the prospects covered by the LORs.  This, she says, is essential to a fair 
adjudication of the case for three reasons.
First, 
Vesta argues that producing LORs only when wells are drilled will necessitate litigating 
her right to a share of Hal=s 
overriding royalty well by well.  
But she has not explained how production of all the LORs at once will eliminate future disputes over whether she 
is due a share of overriding royalty with respect to particular wells.  Vesta must 
either trust Hal to pay her what is due under the divorce decree or else monitor 
MOXY=s 
recorded assignments to him and drilling reports and inquire whether they have 
resulted in payments to him.  Even 
if a review of all the LORs could reduce future 
disputes, Vesta has not shown how that reduction would 
justify the disclosure of a large amount of privileged information that Vesta concedes is completely irrelevant to her claims, since 
most LORs will never be a basis of any payments to 
Hal.
Second, 
Vesta argues that deferring production of the LORs until wells are drilled and Hal is paid an overriding 
royalty gives Hal a financial incentive to lie about the existence of relevant 
LORs in the future.  It is one thing, she says, to produce 
LORs when no one knows whether they will ever be a 
basis of payments to Hal, and another after payments are made.  But such suspicions do not present Aa 
real, rather than a merely possible, threat@ 
to a fair adjudication of Vesta=s 
rights.  Moreover, Vesta=s 
access to LORs cannot be defeated by Hal alone; CLK and MOXY, who have access to 
the LORs, would also have to conceal their existence, 
something Vesta has not shown is 
probable.


Finally, 
Vesta argues that LORs may 
be lost, as some already have been, and evidence and testimony that may be 
necessary to explain them may become inaccessible as memories fade and witnesses 
are unavailable.  But it appears 
that Vesta=s 
claims depend largely on the language of the LORs 
themselves rather than on extraneous evidence.  Again, even if some evidence might be 
lost, Vesta has not shown how that justifies 
disclosure of irrelevant trade secret information.
Because 
Vesta did not establish that the LORs are necessary to a fair adjudication of her claims, the 
trial court abused its discretion in ordering disclosure.  For this additional reason I would 
direct the trial court to set aside its order.
 
                                                                                    

Nathan L. Hecht
Justice
Opinion 
delivered: December 19, 2003




[1] See In re Bass, ___ S.W.3d ___, ___ (Tex. 
2003).

[2] In re Bridgestone/Firestone, Inc., 106 S.W.3d 
730, 732 (Tex. 2003) (citing In re Cont=l Gen. Tire, Inc., 979 S.W.2d 609, 610-613 (Tex. 
1998)).

[3] In re Bridgestone/Firestone, 106 S.W.3d at 
733.