NO. 07-06-0315-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 10, 2007
_____

IN RE DIAMOND SHAMROCK REFINING COMPANY, L.P.,

Relator
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., CAMPBELL, J. and BOYD, S.J.[1]

Diamond Shamrock Refining Company, L.P., petitions for a writ of mandamus asking us to direct the judge of the 69th Judicial District, Moore County, Texas, to rescind his order of June 21, 2006, compelling the production of various documents. We grant the petition.

*Background*

The dispute arises from Diamond Shamrock's contest to the appraisal value assessed by the Moore County Appraisal District on Diamond Shamrock's McKee Refinery. The appraisal covered the years 2002 through 2005. After suit was filed, the District sought the production of numerous documents to which Diamond Shamrock objected, contending that the information encompassed privileged trade secrets. After a hearing, the

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. §75.002(a)(1) (Vernon 2005).

trial court ordered Diamond Shamrock to produce all of the documents.[2]  Thereafter, Diamond Shamrock petitioned for mandamus relief requesting that the order be vacated.

At the hearing held upon the petition for a writ of mandamus, all counsel were asked if they disputed whether the discovery sought comprised trade secrets.  They informed this court that, for purposes of the mandamus proceeding, they did not.   Given this representation, we need not and do not address whether the items in controversy were or are indeed such secrets.

*Applicable Law*

To be entitled to a writ of mandamus, there must be proof that the trial court clearly abused its discretion or violated a duty imposed by law and that review through appeal is inadequate.  *Walker v. Packer,* 827 S.W.2d 833, 839-40 (Tex. 1992).  Furthermore, if the documents involve trade secrets and it is determined that the trial court abused its discretion in requiring their disclosure, then mandamus is appropriate for the wrong is not susceptible to correction through appeal.  *In re Bass,* 113 S.W.3d 735, 745 (Tex. 2003).

Next, whether the trial court abused its discretion in compelling the discovery of trade secrets depends on whether the party seeking the information established that it was necessary for a fair adjudication of its claim or defense.  *In re Continental General Tire, Inc.,* 979 S.W.2d 609, 613 (Tex. 1998).  In turn, "necessity depends upon whether the [data] . . .  is material and necessary to the litigation.'"  *In re Bass,* 113 S.W.3d at 743, *quoting In re Continental General Tire, Inc.*, 979 S.W.2d 609 (Tex. 1998).  It is not enough

---

[2]The trial court ordered that Diamond Shamrock respond fully and completely to Requests for Production Nos. 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 41, 42, and 43.

to simply state that the information is necessary. Nor do general assertions of unfairness suffice. *In re Bridgestone/Firestone, Inc.,* 106 S.W.3d 730, 732-33 (Tex. 2003). On the contrary, the party seeking disclosure "must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *Id*. In other words, the litigant must satisfy the test through the presentation of competent evidence. If it does not, then compelling disclosure amounts to an instance of abused discretion warranting mandamus relief. *See e.g., id.* at 734 (so recognizing); *In re Continental General Tire, Inc.,* 979 S.W.2d at 615 (so recognizing).

*Application of Law*

Again, because neither party disputed that the discovery in question comprised trade secrets, we do not address that matter. Instead, we turn our attention to whether the Appraisal District met the test described in *Bass*, *Bridgestone*, and *Continental*.

According to the record before us, the discovery was allegedly sought to facilitate the valuation of the McKee refinery. Such a valuation could occur through several ways, according to the Appraisal District's expert and sole witness. They include both the income or cost approaches. And, when asked by the District if the information in general was "necessary," its expert generally said "[y]es." Yet, why it was went unexplained, save for two instances. Those two instances concerned information about 1) the refinery's workforce and union contracts and 2) Diamond Shamrock's acquisition of other refineries located outside Moore County.

3

With regard to the union contracts and workforce data, the expert concluded that such information when "using the income approach" would "serve to help make . . . adjustments" for "certain intangibles." Yet, at no time did he suggest that he could not complete his appraisal without the information. Nor did he discuss how withholding the information from him would hamper his task in any way. Instead, he simply said that having the data would "help."

Concerning the matter of other refineries acquired by Diamond Shamrock, the expert opined that the "information would be used to develop the comparable sales approach" and that "[i]t's always necessary to have good information about the comparable sales in order to apply them." Previously though, he had told the trial court that "buyers and sellers both look to the income approach for establishing value." So too did he later admit that he also used the cost approach. Given their different names, one could possibly assume that the income, cost, and comparable sales approaches all differed in some way. Whether they do, however, went undeveloped. And, with the exception of the broad and conclusory statements cited, the expert gave no explanation of why the trade secret information was necessary to his calculation under any valuation method. Nor were we told how the value of realty sold miles from Moore County has any relevance, much less is necessary, to the valuation of realty within Moore County. It went unexplained.

Also of note is the evidence illustrating that the District already had appraised the McKee refinery during the years in question. Arguably, there existed data upon which those appraisals were founded for surely an appraisal district would not calculate values from whole cloth. Yet, the District's expert and sole witness conceded that the District had not provided that information to him. Given this, any suggestion that the previously

4

undisclosed trade secrets of Diamond Shamrock were necessary to complete an appraisal is dubious. Until the extent of that other data, if any, is perused by the expert (and revealed to the court for assessment), it cannot be determined how withholding the trade secrets will impair the District's case on the merits.

In short, the record before us lacks evidence "demonstrat[ing] with specificity" that the risk of an "unjust result" is "real" if the trade secrets of Diamond Shamrock remain secret. The District failed to prove necessity as required by *Bass*, *Firestone*, and *Continental*. And, the conclusory statements of the District's expert to the contrary do not fill the gap. *See Coastal Transp. Co. v. Crown Cent. Petroleum,* 136 S.W.3d 227, 232 (Tex. 2004) (holding that conclusory statements are not evidence). Accordingly, we conditionally grant mandamus relief directing the trial court to vacate its June 21, 2006 "Order to Compel." We are confident that it will comply and will issue a writ of mandamus only if does not. Finally, our stay of the trial court's directive will remain in effect until the June 21st order is vacated.

Brian Quinn
Chief Justice