In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00337-CV

_____

IN RE KONGSBERG INC. AND BOMBARDIER RECREATIONAL
PRODUCTS, INC.

_____

Original Proceeding
128th District Court of Orange County, Texas
Trial Cause No. A140292-C

_____

OPINION

In this original proceeding, we consider whether the trial court abused its
discretion by compelling Kongsberg Inc. and Bombardier Recreational Products,
Inc. to produce copies of software programs and other material protected under their
respective trade-secret privileges in a case involving a three-wheel motorcycle sold
by Bombardier. After the trial court issued an order compelling Kongsberg and
Bombardier to comply with a request to produce in the negligence and products

liability suit the plaintiffs filed,[1] Kongsberg and Bombardier filed a joint petition for a writ of mandamus seeking relief from the discovery order. In their petition, Kongsberg and Bombardier ask that we direct the trial court to withdraw its order granting the plaintiffs' motion to compel.

We conclude the trial court abused its discretion by finding that the plaintiffs established that access to the trade-secret discovery that is the subject of the discovery order is necessary to allow the plaintiffs' consulting expert to fully evaluate all aspects of the design of a power steering unit on the motorcycle that is the subject of the suit.[2] Because the evidence before the trial court establishes that the possibility of an unjust result is merely a possible threat,[3] we conclude the trial court erred by finding that plaintiffs met their burden to prove that the discovery of

---

[1] The plaintiffs involved in the lawsuit are (1) Kenneth Tolman, individually, as representative of the Estate of Ramona Gay Tolman, and as next friend of J.P.T., a minor; (2) Brittnie Michelle (Twiner) Stephenson; (3) Courteney Renee Twiner; and (4) Tiffany Rachelle Twiner. Brittnie, Courteney and Tiffany are Ramona's adult daughters. Kenneth is Ramona's surviving spouse, and J.P.T. is Kenneth's and Ramona's minor daughter.

[2] *See In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 733 (Tex. 2003) (orig. proceeding); *In re Bass*, 113 S.W.3d 735, 743 (Tex. 2003) (orig. proceeding).

[3] *Id*.

the trade secrets at issue is "'material and necessary to the litigation.'"[4] Therefore, we conditionally grant Kongsberg's and Bombardier's joint petition and direct the trial court to vacate the discovery order that it issued granting plaintiffs' motion to compel.

## Background

In April 2014, Ramona Tolman was operating her 2011 Can-Am Spyder motorcycle on a farm-to-market road when, according to the plaintiffs' live pleadings, "she was unable to steer [the motorcycle and it] left the roadway and struck a tree." Ramona died from the injuries that she suffered in the collision. Ramona's minor daughter, J.P.T. who was travelling with Ramona as a passenger, was also injured in the collision. Subsequently, Ramona's husband, as the representative of her estate and as J.P.T.'s next friend, and Ramona's adult daughters filed a negligence and products liability suit against Kongsberg, Bombardier, and Countyline Powersports Corporation,[5] claiming that the 2011 Spyder motorcycle

---

[4] *In re Bass*, 113 S.W.3d at 743 (quoting *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 615 (Tex. 1998) (orig. proceeding)).

[5] The retailer, Countyline Powersports Corporation, is not a party to this mandamus proceeding. That said, the trial court's discovery order does not compel Countyline to produce any discovery.

that Ramona had purchased from Countyline was unreasonably dangerous due to its manufacture, design, or the way it was marketed.[6]

The heart of the discovery dispute at issue in this proceeding concerns the trade secrets that Kongsberg and Bombardier must produce to comply with the trial court's discovery order. Generally, the discovery order requires Kongsberg and Bombardier to produce their proprietary computer software programs and materials related to them. Kongsberg and Bombardier use the software programs to retrieve and analyze data from Spyder motorcycles. No party disputes that all the discovery relevant to this proceeding is subject to Kongsberg's and Bombardier's privileges to protect their trade secrets. Both Kongsberg and Bombardier lodged trade-secret objections to producing the information the plaintiffs were seeking in their motion to compel, arguing that the plaintiffs' consulting expert should not be allowed unfettered, engineering-level access to their software and the materials that related to the programs since they had provided the consulting expert with the information obtained from Ramona's motorcycle during the inspections they conducted on her motorcycle. During the inspections, Kongsberg's and Bombardier's technicians ran

---

[6] The Tolman parties' Fourth Amended Petition, their live petition in this proceeding, does not specify the alleged defect or defects that they claim existed in the motorcycle that caused the motorcycle to collide with a tree.

the proprietary software programs to gather data from the power steering unit on Ramona's motorcycle.

Arguing that the programs and related information were necessary so their expert could complete his work, the plaintiffs moved to compel Kongsberg and Bombardier to produce the trade-secret discovery that is now at issue here. The trial court conducted an evidentiary hearing on the plaintiffs' motion to compel in May 2018. During the hearing, through affidavits and exhibits, Kongsberg and Bombardier provided the trial court with evidence showing that the plaintiffs were seeking to discover trade secrets. During the hearing, Kongsberg and Bombardier proved that the plaintiffs' consulting expert participated in two joint inspections of the motorcycle's power steering unit, and that during these, the consulting expert was permitted to direct technicians provided by the companies to run their proprietary software program and extract data from Ramona's motorcycle that the consultant wanted to review in evaluating the motorcycle's design. During the hearing, the plaintiffs' consulting expert agreed that the technicians provided him all the data that he asked them to acquire during the inspections.

In this original proceeding, plaintiffs have not challenged the trial court's implied finding characterizing the software programs and material related to them

as trade secrets.[7] Instead, the plaintiffs argue that allowing the trade-secret discovery is necessary because without it, their expert cannot thoroughly and completely analyze whether Ramona's motorcycle was in a defective and unreasonably dangerous condition when they placed the power steering unit into the stream of commerce. According to the plaintiffs, by issuing a protective order with the order on the motion to compel, the trial court protected Kongsberg's and Bombardier's privacy interests in their trade secrets.

Only one witness, the plaintiffs' consulting expert, was called to testify in the discovery hearing that Kongsberg and Bombardier complain about here.[8] During the hearing, the plaintiffs' consulting expert testified that without full access to the trade-secret discovery the plaintiffs were seeking, he does not have the ability to analyze fully the raw data that he has already obtained. The consulting expert suggested that Kongsberg and Bombardier provided him with data following the inspections that they converted from computer codes. But his testimony shows that he has access to the raw data the technicians obtained that is viewable on the screens of the computers

---

[7] In their response to the jointly-filed petition for mandamus, the plaintiffs state that they "did not challenge [Kongsberg's and Bombardier's] *claim* that this is all proprietary data." (emphasis in original).

[8] Other than the witness's testimony, the remaining evidence considered in the hearing consisted of exhibits and affidavits, which were marked and admitted into evidence during the hearing.

that the technicians used to extract data. The consulting expert's testimony reflects that he videotaped the computers' screens as they collected information during the inspections. The testimony from the hearing shows that following the inspections, Kongsberg and Bombardier gave the consulting expert various tangible items of evidence relevant to the inspections. The items he received include (1) spreadsheets containing the data extracted from the steering unit; (2) a service report, created by the software program, that revealed the fault codes in the steering unit detected by the software during one of the inspections; and (3) a spreadsheet of raw data, converted into hexadecimal form from computer codes.

In the hearing, the plaintiffs' consulting expert suggested that the data he received during and following the inspections was insufficient, for two reasons. First, the consultant stated that he wanted to have the ability to conduct additional inspections on his own while using Kongsberg's and Bombardier's proprietary software. According to the consulting expert, through additional inspections, he could determine if Ramona's motorcycle experienced "performance problems with [the motorcycle's] electronic antilock brake systems, vehicle stability control systems, and also electronic power steering systems." Second, the consulting expert explained that he needed the trade-secret discovery so that he could more fully understand how the steering units on Spyder motorcycles work. He testified that with

engineering-level access to the proprietary software programs, he could see all the data in the steering unit. With the opportunity to see all the data, the consulting expert believed that he could "understand how the [motorcycle] actually works or what defects it may have performance-wise."

The consulting expert disagreed with the suggestions made by Kongsberg and Bombardier that further joint sessions with their technicians would allow him to fully understand the power steering unit,[9] explaining that without unfettered access to the trade-secret discovery, he could not fully understand the capabilities of the power steering unit on Ramona's motorcycle. Nevertheless, the consulting expert acknowledged on cross examination that Kongsberg and Bombardier had provided him with access to all testing data that their technicians acquired when they inspected the unit.[10] The evidence in the hearing also shows that Ramona's motorcycle and the steering unit on it are in the plaintiffs' possession and control.

---

[9] The consulting expert acknowledged in the hearing that additional joint sessions with the technicians from Kongsberg and Bombardier running their proprietary software programs might be useful.

[10] The information in the hearing shows that the consulting expert took photographs of the computer screens and videotaped the inspections. Thus, the witness has access to whatever codes and data are viewable on the screens of the computers that were used to inspect Ramona's motorcycle.

The evidence the trial court considered in the hearing includes the consulting expert's preliminary report. It shows the consulting expert wants full access to the trade-secret discovery so that he can identify "all possible failures in a design, a manufacturing or assembly process, or a product or service." The report also shows the consultant wants to use the trade-secret discovery to obtain data from steering units on similar Spyder motorcycles. The consulting expert's report states that, based on the information the consultant reviewed, "the [motorcycle] failed to perform in a safe and appropriate manner, due to a dangerous and defective condition within the [motorcycle's] electronic power steering system." Thus, the report does not show that the consultant was unable to form an opinion in the case about whether the power steering unit at issue is defective.

At the end of the hearing, the trial court took the matter under advisement. Before the trial court ruled, Kongsberg and Bombardier submitted letter briefs. In them, they outlined why the plaintiffs' motion should be denied. Several weeks later, the trial court ordered Kongsberg and Bombardier to produce nine categories of documents, and the order requires Kongsberg and Bombardier to produce material that is protected by their trade secrets. The trial court's June 2018 discovery order includes a protective order. The protective order limits the trade-secret production to the parties to the suit. It also requires the law firm representing the plaintiffs and

the experts the firm had retained to destroy or return all the information they obtain under the June 2018 order when the case ends. The trial court stayed its order pending our resolution of the questions raised by Kongsberg and Bombardier in their petition for mandamus relief.

Standard of Review

The Texas Supreme Court has held that no adequate appellate remedy exists if a trial court orders a party to produce trade-secret discovery absent a showing of necessity.[11] A trial court abuses its discretion if it fails to correctly analyze and apply the law.[12] In the context of discovery addressing trade secrets, a court abuses its discretion by ordering a party to produce trade-secret discovery without first requiring the party who is seeking the information to show that the information is necessary to a fair resolution of that party's claims or to rebut another party's defense.[13]

Generally, Rule 507 of the Texas Rules of Evidence governs the trade-secret privilege. It provides:

---

[11] *In re Bass*, 113 S.W.3d at 745 (citing *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 615).

[12] *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

[13] *See In re Cont'l Gen. Tire, Inc.*, 979 S.W.3d at 612.

A person has a privilege to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, unless the court finds that nondisclosure will tend to conceal fraud or otherwise work injustice.[14]

No dispute exists in this proceeding that the trial court's order compels Kongsberg and Bombardier to produce trade-secret discovery.[15] Generally, "a trade secret is 'any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it.'"[16] Once the party resisting discovery shows that the discovery is subject to that party's trade-secret privilege, the party seeking the discovery must prove that the discovery is necessary to the fair resolution of the claims that have been raised in the case.[17]

---

[14] Tex. R. Evid. 507.

[15] The trial court sealed the record of the proceedings in the hearing, ordered that the parties not disclose the trade-secret discovery in violation of the protective order, and ordered the plaintiffs to return or destroy the trade-secret discovery at the end of the case. Thus, while there is no specific trade-secret finding, the trial court's order implies the trial court found the software and related materials to be privileged based on the affidavits that Kongsberg and Bombardier asked the trial court to consider in the hearing.

[16] *In re Bass*, 113 S.W.3d at 739 (quoting *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).

[17] *See In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 613.

A burden shifting approach is used in resolving discovery disputes about trade secrets. Once the party resisting the discovery establishes that the discovery invades that party's rights to protect its trade secrets, the party seeking the information must prove, in a specific manner, how not having access to the other's trade secrets "will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat."[18] The Dallas Court of Appeals has explained that the party seeking the trade-secret discovery does not meet this test if the evidence in the hearing shows "an alternative means of proof is available that would not significantly impair the presentation of the case's merits[.]"[19] In that case, "the information is merely useful and not necessary."[20] It is also clear that a party seeking to discover another party's trade secrets cannot satisfy its burden merely by presenting evidence that denying the discovery might prove to be unfair.[21]

---

[18] *In re Bridgestone/Firestone, Inc*., 106 S.W.3d at 733.

[19] *In re Michelin N. Am., Inc.*, No. 05-15-01480-CV, 2016 Tex. App. LEXIS 2467, at *18-19 (Tex. App.—Dallas Mar. 9, 2016, orig. proceeding) (mem. op.).

[20] *Id.*

[21] *In re Bridgestone/Firestone*, *Inc.*, 106 S.W.3d at 732-33.

12

Analysis

Because no dispute exists in this proceeding that the discovery order required Kongsberg and Bombardier to produce information protected by their trade secrets, we must determine whether the evidence in the hearing established, with *specificity*, that the production of the material the plaintiffs were seeking was *material* and *necessary* to the litigation.[22] If the evidence merely shows that not having the trade secrets might prove to be unfair, it is insufficient to show that the discovery of another's trade secrets is *necessary* to allow the parties to the case to have a fair trial.[23]

In their response to the petition for mandamus, the plaintiffs argue that the consulting expert's testimony proves that they need to discover the trade secrets they have requested so their consulting expert can fully analyze various systems on the Spyder motorcycle to determine whether Ramona's motorcycle was defective. During the hearing, the consulting expert explained that he had created a software program to access the motorcycle's power steering unit, and that while he had not been completely successful in reverse engineering Kongsberg's and Bombardier's proprietary software, the evidence established that he has been able to perform a

---

[22] *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 615 (emphasis added).

[23] *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d at 732 (emphasis added).

reasonable investigation into the role the steering unit played in causing the collision that is the subject of the suit. The consulting expert's report reflects that he has formed an opinion that the steering unit was defective. Therefore, the plaintiffs' request for the trade-secret discovery appears designed to allow the consultant to further buttress his opinion that the steering unit on Ramona's motorcycle was defective.

The plaintiffs also argue that their consulting expert needs to have the same ability to analyze data as Kongsberg and Bombardier. But the evidence from the hearing shows that the consulting expert has been provided all the data the technicians from Kongsberg and Bombardier obtained in the inspections. And the evidence fails to show that Kongsberg and Bombardier can access the steering unit on the motorcycle involved in the suit without the plaintiffs being present. While the consulting expert's testimony shows that having Kongsberg's and Bombardier's trade secrets on Ramona's motorcycle might be helpful to the plaintiffs, the testimony falls short of demonstrating that the expert must have the discovery so he can form opinions about the adequacy of the design, manufacture and marketing of Ramona's motorcycle.[24]

---

[24] *In re Bass*, 113 S.W.3d at 743 (noting that necessity requires a party seeking trade-secret discovery to establish that the production is material to a litigated claim).

Plaintiffs also rely on their consulting expert's testimony suggesting that Kongsberg's and Bombardier's experts and consultants would have an advantage unless he has full access to their trade secrets. But there was no evidence introduced in the hearing that any experts or employees from Kongsberg or Bombardier have relied or intend to rely on data from the steering unit that the consulting expert has not seen. The testimony showing that Ramona's motorcycle is in the plaintiffs' control prevents the defendants from accessing more data without the plaintiffs' consent. There was also no evidence before the trial court showing that Kongsberg and Bombardier intend to perform further tests in the litigation on other motorcycles like the one Ramona was riding when the collision occurred. If they do, the rules governing discovery will require them to produce the documents, tangible things, physical models, reports, compilations of data, or other material provided to, reviewed by, or prepared by or for the expert who a party retains to testify in a trial.[25] And the consulting expert's testimony fails to explain why he will not be able to

---

[25] *See* Tex. R. Civ. P. 194.2(f)(4) (outlining the categories of documents that a testifying expert must disclose); *see also id.* 192.3(e) (outlining the scope of expert discovery), *id.* 195.5 ("In addition to disclosure under Rule 194, a party may obtain discovery concerning the subject matter on which the expert is expected to testify . . . and other discoverable matters, including documents not produced in disclosure, only by oral deposition of the expert and by a report prepared by the expert under this rule.").

15

review that data in a manner that will allow the plaintiffs to receive a fair trial on their claims.

Finally, the consulting expert's testimony fails to show why, should the consultant want to gather additional data, additional inspections conducted with technicians from Kongsberg and Bombardier would be insufficient to allow him to gather more information about steering units on Spyder motorcycles.[26] The record does not support the trial court's conclusion that unfettered access to Kongsberg's and Bombardier's trade secrets is necessary so the plaintiffs can receive a fair trial.[27]

We conclude the evidence before the trial court fails to show the requested trade-secret discovery is "*necessary* for a fair adjudication" of the plaintiffs' claims.[28] Although the plaintiffs suggest that their consulting expert cannot fully understand the capabilities of the software programs without having full access to the trade-secret discovery, and that Kongsberg and Bombardier better understand

---

[26] *In re Michelin N. Am.*, 2016 Tex. App. LEXIS 2467, at *18-19 (emphasis added).

[27] *Id.*

[28] *See In re Union Pac. R.R. Co.*, 294 S.W.3d at 592 (emphasis added) (quoting *In re Bridgestone/Firestone, Inc.* 106 S.W.3d at 732).

the capabilities of their software, these arguments are insufficient to show that disallowing the trade-secret discovery will prove to be unfair.[29]

We hold the trial court abused its discretion by ordering Kongsberg and Bombardier to produce the trade-secret discovery at issue here. We also hold that Kongsberg and Bombardier lack an adequate remedy through an ordinary appeal.[30] We conditionally grant the joint petition for mandamus relief. The writ will issue only if the trial court fails to vacate its June 7, 2018 order.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on September 20, 2018
Opinion Delivered November 8, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[29] *See In re Union Pac. R.R.*, 294 S.W.3d at 592-93. The plaintiffs also point to the consulting expert's testimony that the different software programs produced different results and that the expert cannot reconcile the discrepancies in the tests given his lack of understanding about the differences in the programs. While his lack of understanding may suggest a possibility of unfairness, the plaintiffs have the right to depose witnesses from Kongsberg and Bombardier and to obtain discovery from their testifying experts about the reasons the alleged discrepancies in testing occurred.

[30] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004).