NO. 07-04-0506-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 20, 2005

_____

IN RE: WEST TEXAS POSITRON, LTD.,
WEST TEXAS POSITRON, L.L.C., AND MIKE WHYTE, RELATORS

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Relators West Texas Positron, Ltd., a Texas limited partnership, its general partner, West Texas Positron, L.L.C. and Michael J. Whyte, bring this original proceeding seeking a writ of mandamus directing 237th District Court Judge, the Honorable Sam Medina, to vacate an order compelling production of documents in response to a discovery request. We will deny the requested relief.

**Background**

The litigation giving rise to this proceeding is a suit brought against relators by real party in interest Nancy Cahill, a limited partner and former employee of West Texas Positron, Ltd. Cahill's pleadings allege she has expertise in the operation of a cyclotron,

a device which produces material needed by doctors and hospitals operating PET scanners, and that Whyte proposed to Cahill creation of a partnership for the operation of a cyclotron facility in Lubbock. The pleadings contain a written partnership agreement dated September 30, 2002, naming West Texas Positron, L.L.C. as sole general partner and owner of a one percent interest in West Texas Positron, Ltd. Whyte apparently is the sole member of West Texas Positron, L.L.C. Whyte is also a limited partner with a 73 percent interest. The agreement states Cahill owns a 10 percent limited partnership interest, with other individuals owning the remaining limited partnership interests.

The partnership agreement states an address in San Francisco, California, as the partnership's principal place of business. The agreement provides the books, records and accounts of the partnership shall be maintained at its principal place of business, and provides that each partner shall have access during normal business hours to all its books, records and accounts. The agreement also provides a limited partner the right to audit the partnership's books, and contains the partners' agreement to submit claims between them arising over provisions of the agreement to mediation, and arbitration if necessary, rather than institute litigation. The agreement states it is to be construed in accordance with the laws of Texas, excluding its conflict-of-laws principles.

On a date not shown in this record, but apparently after only a few months of operation, Cahill terminated her employment with the partnership because, her pleadings allege, Whyte refused to comply with the terms of their agreement, refused to provide financial reports and an accounting, and engaged in unethical business practices.

In August 2003 Cahill and her husband reviewed some of the partnership's records at the office of its accountant in California. They were allowed to make notes from the documents but not permitted to make copies. In September 2003 Cahill filed the underlying action as one under Rule of Civil Procedure 202, seeking an order for Whyte's deposition for the purpose of investigating potential claims. Relators took the position Cahill's suit violated the partnership agreement's provisions for mediation and arbitration and, when she failed to dismiss the suit, took steps to terminate her partnership interest in November 2003.

In May and July 2004 Cahill filed amended petitions asserting claims against relators.[1] The defendants' response included counterclaims for breach of fiduciary duty and misappropriation of trade secrets, and sought declaratory judgments that Cahill's original suit was in breach of the partnership agreement and her partnership interest was properly terminated.

In June 2004 Cahill served a request for production on the partnership and its general partner which gives rise to this proceeding. It requested sixteen documents or groups of documents concerning the partnership, of which the following are at issue here:

---

[1]Cahill's second amended petition, filed on July 1, alleges the defendants breached the partnership agreement in several respects, including the denial of access to partnership records. It asserts her partnership interest was wrongfully forfeited. It further alleges claims including fraud, breach of fiduciary duty and other duties, and diversion of partnership assets. The petition seeks to recover the value of her interest in the partnership, an accounting, compensatory and exemplary damages, attorneys fees, costs and interest.

Request 1: "Inception to current financial statements, tax returns and general ledgers";

Request 2: "Current detailed depreciation list";

Request 3: "Aged accounts receivable list";

Request 9: "List of largest customers and percentage of sales in 2003";

Request 12: "Copies of contractual obligations, including leases, loan agreements, etc."; and

Request 16: Inception to current bank statements and checks."

The partnership and general partner responded to Cahill's request for production with objections asserting, among several others, an objection to the extent the request would require the defendants to disclose information which constitutes trade secrets.

In August 2004, Cahill filed a motion to compel and for sanctions. The partnership's response to the motion asserted it had responded "fully pursuant to Rule 196.2(b),"[2] reiterating its objections to the request. The response stated "the only information in controversy is the value of plaintiff's interest in the partnership," and the information sought

_____

[2] The response made no mention of Rules of Civil Procedure 193.2, 193.3, or 193.4. *See, e.g.,* Tex. R. Civ. P. 193.2(f) (stating objection to written discovery request on the basis of privilege is improper). We do not reach Cahill's contention that relators' petition should be denied because of their failure to observe the procedural requirements of Rules 193.3 and 193.4 in the trial court, or relators' contention that Cahill waived that complaint.

-4-

was not relevant to that claim. The response also sought to establish the documents as trade secrets under Rule of Evidence 507. In support, the partnership attached affidavits of Whyte and the partnership's accountant. Whyte's affidavit states requests 1, 2, 3, 12 and 16 seek "highly sensitive" financial information, that the partnership keeps the information in San Francisco "under lock and key," only accessible to Whyte, the partnership's chief financial officer and "the accountant/bookkeeper," and that the information was never available to Cahill. Whyte states that disclosure of the information to competitors could be highly detrimental to West Texas Positron. The affidavit also states the partnership has made great efforts to maintain the confidentiality of its customer list and the sales volume of each customer, noting that all billing and pricing is conducted through the partnership's San Francisco office. Access to that information is limited to the same three people.

Whyte further states that "to the best of his knowledge," Cahill is working for a competitor, "there is a great risk she would exploit the information to the detriment of West Texas Positron," and she had once bragged to him about taking trade secret information from a prior employer.

Whyte's affidavit also contains the claim that the only information in controversy in the suit is the value of Cahill's interest in the partnership. Significantly, the affidavit further states production of the documents sought by Cahill is unnecessary because the parties mutually agreed "to have an independent certified public accountant perform an evaluation

of the company in order that a value may be determined for [Cahill's] interest in the partnership as set forth in the partnership agreement."[3]

The accountant's affidavit related the circumstances by which Cahill was given access to partnership's records in his office in August 2003, and described their disagreement on that occasion over her contention she was entitled to take with her some of the information provided.

Following a September 3 hearing at which no evidence was admitted, in a September 20 order the trial court granted Cahill's motion to compel, directing the parties to enter into a mutually agreeable confidentiality agreement applicable to both parties. The order also states the confidentiality agreement must provide that invoices with pricing information will be made available only to Cahill's counsel and experts. The order also directs Cahill to provide the defendants[4] with a list of all of the customers of the defendants within her knowledge and the defendants are to produce "all records pertaining to the customers listed[.]" For other customers, the defendants are allowed to prepare a privilege log of responsive documents for the court's review. The order further directs Cahill to more

---

[3]A bench brief the partnership and general partner presented at the September 3 hearing contains a copy of a July 8, 2004 letter agreement from a Lubbock firm of certified public accountants addressed to and signed by counsel for relators and Cahill. The letter states the firm had been retained by both counsel, and describes services to be provided by the firm including "determining the amount of payment due to an exiting partner in accordance with the formula set forth in the West Texas Positron, Ltd. partnership agreement." The record contains no information concerning the results of the firm's work, but at oral argument on relator's petition for writ of mandamus counsel indicate the work has not resolved the parties' disagreements.

[4]The defendants are listed as the partnership and its general partner. Although Whyte is a relator in this proceeding, the trial court's order is not directed to him individually.

specifically identify documents to be produced under her request number 12 seeking copies of contractual obligations, including leases and loan agreements.

## Applicable Law

The Texas Supreme Court set out the manner in which Rule of Evidence 507 is to be applied in discovery, as follows: "First, the party resisting discovery must establish that the information is a trade secret. The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims. If the requesting party meets this burden, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order. In each circumstance, the trial court must weigh the degree of the requesting party's need for the information with the potential harm of disclosure to the resisting party." *In re Continental General Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998) (orig. proceeding) (footnote omitted). To meet its burden, a party seeking trade secret information "cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair" fair adjudication of the claim. *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 733 (Tex. 2003) (orig. proceeding).

The scope of discovery is largely within the discretion of the trial court. *See In re American Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (per curiam). A writ of mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law, when there is no adequate remedy by law. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding).

Mandamus is not issued as a matter of right, but at the discretion of the court. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding); *see In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). It is the relator's burden to show entitlement to the relief being requested. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding).

A trial court abuses its discretion when it "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). If a trial court orders production once trade secret status is proven, but the party seeking production has not shown a necessity for the requested materials, the trial court's action is an abuse of discretion. *In re Bass*, 113 S.W.3d 735, 738 (Tex. 2003) (orig. proceeding).

A party will not have an adequate remedy by appeal when the appellate court will be unable to cure the trial court's discovery error, such as by erroneously ordering the disclosure of trade secrets "without adequate protections to maintain the confidentiality of the information." *Walker*, 827 S.W.2d at 843.

**Application of Law**

The trial court's order does not say, and the record does not otherwise reflect, whether the court found the information sought by Cahill contains the partnership's trade secrets. The language of the order suggests the trial court found at least some of the information sought to be privileged as a trade secret. Relators contend they are entitled to mandamus relief from the trial court's order because they conclusively proved the

requested documents contain trade secrets, and Cahill failed to satisfy her burden to demonstrate the information she seeks is necessary for a fair adjudication of her claims. Cahill disputes both contentions. For purposes of this opinion, we will assume relators have established the information sought by Cahill contains trade secrets owned by the partnership.[5]

We disagree with relators' assertion there was no evidence before the court to establish that the information sought by Cahill is necessary for a fair adjudication. The trial court's determination of the necessity of information involves consideration of the parties' claims and defenses. *See In re Bass*, 113 S.W.3d at 743 (determining necessity of information for fair adjudication of claim by analyzing claims asserted); *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d at 735 (O'Neill, J., concurring) (analysis of necessity of trade secret information for fair adjudication "must begin" with examination of relationship between information and material elements of parties' claims and defenses). As noted, before the trial court, relators took the position that the subject matter of the litigation was the value of Cahill's partnership interest, noting Cahill's live pleadings which asked that the value of her interest be determined by the trier of fact.

---

[5]By engaging in the assumption relators have established the information sought contains trade secrets, we do not reach, and express no opinion on, some interesting questions involving the assertion of the trade secret privilege by a limited partnership against a current or former partner. *See, e.g.*, Texas Revised Limited Partnership Act, Tex. Rev. Civ. Stat. Ann. art. 6132a-1, § 1.07(d) (concerning partner's right to examine records required to be maintained by partnership "and other information regarding the business, affairs, and financial condition of the limited partnership as is just and reasonable.") *Cf. B & R Communications v. Lopez*, 890 S.W.2d 224 (Tex.App.–Amarillo 1994) (orig. proceeding) (general partnership).

Information before the trial court demonstrated that the partnership to be valued is closely-held and had then been in existence no more than two years. The affidavit evidence presented to the trial court by the partnership supports the unsurprising conclusion that financial information concerning the partnership is needed to determine the value of an interest in this partnership. As noted, Whyte's affidavit states that information relevant to that determination had already been given to the Lubbock CPA jointly retained by the parties "in order that an independent evaluation of the value of [Cahill's] partnership interest may be determined according to the partnership agreement."[6] Whyte's example of the information already provided to the jointly-retained CPA is a general ledger, containing a record of every check written by the partnership. The trial court reasonably could have concluded that information of such detail from the records of the partnership, presumably considered by the jointly-retained CPA to be necessary to that determination, also was necessary to Cahill's ability to pursue judicial determination of the value of her partnership interest. Further, the general ledger was not the only item of such information provided the jointly-retained CPA. Whyte's affidavit gives it as an example of the information provided.

The partnership's evidence also demonstrates Cahill has no other source for the information.[7] Whyte's affidavit expressly states the information concerning customers could

[6]Cahill does not contend the partnership has waived the privilege, either by providing her access to some books and records in August 2003 or by providing information to the jointly-retained CPA.

[7]*See In re Bridgestone/Firestone, Inc.*, 106 S.W.3d at 736 (O'Neill, J., concurring) (case law teaches trade secret information is generally discoverable when not allowing discovery would significantly impair party's ability to establish or rebut material element of a claim or defense, and party's ability is significantly impaired when the information is unavailable from any other source and no adequate alternative means of proof exist).

-10-

be obtained from only two sources, those being the partnership's records in San Francisco and the customers themselves, and the customers were subject to confidentiality agreements in their contracts with the partnership. The affidavit flatly states the other financial information Cahill seeks "is not ascertainable elsewhere."

On this record, we cannot say that a conclusion financial information and information concerning its largest customers' shares of sales from the records of the limited partnership is necessary to an adjudication of the value of an interest in the partnership[8] was arbitrary or unreasonable, or otherwise an abuse of the trial court's discretion.

There is a further reason relators' petition must be denied. As noted, the requirement that one seeking mandamus have no adequate remedy by appeal is satisfied when a court erroneously orders production of trade secrets without adequate protections to maintain their confidentiality. *Walker*, 827 S.W.2d at 843. Here, the trial court's order compelling discovery is conditioned on the parties' entry into a mutually agreeable confidentiality agreement, permits relators to assert the privilege with respect to information about some customers and restricts pricing information to Cahill's counsel and experts in the absence of further court order. Relators argue a protective order may not be effective to prevent Cahill's improper use of the partnership's claimed trade secrets, but we are unwilling to issue mandamus on the assumption there is no possible mutually agreeable confidentiality arrangement which, when coupled with the restrictions contained in the court's order, would adequately maintain confidentiality of the information.

---

[8]Our discussion should not be taken as expressing agreement or disagreement with relators' statement to the trial court that the value of Cahill's partnership interest is the "only information in controversy" in the suit.

Concluding relators have established neither that the trial court has abused its discretion nor that they are without other remedy, we deny their petition for writ of mandamus. We grant relators' motion to file a supplemental brief and deny their motion for emergency relief.


James T. Campbell
Justice