NO. 07-07-0350-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 11, 2007



______________________________




LEONESEO SANCHEZ,



 Appellant


v.



THE STATE OF TEXAS,


 

 Appellee


_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2007-415,449; HON. JIM BOB DARNELL, PRESIDING


_______________________________





Abatement and Remand



________________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Pending before the court is a motion to withdraw as counsel filed by appellant's
attorney. In the motion, counsel represents that appellant is unable to pay for the
reporter's record or "comply with the terms of the employment agreement [for the
attorney's] services." Furthermore, appellate counsel requests that he be permitted to
withdraw and allow other counsel to be appointed on appeal. Therefore, we grant
counsel's motion to withdraw, abate the appeal, remand the cause to the 140th Judicial
District Court of Lubbock County (district court), and order the district court to immediately
notice and conduct a hearing to determine:

 1) whether appellant wishes to pursue this appeal;

 

 2) whether appellant is indigent;

 

 3) whether appellant has retained counsel to prosecute this appeal; and

 

 4) if appellant is indigent, whether he is entitled to appointed counsel on
appeal and a free appellate record.

 

 In determining indigency, the court shall consider the factors set forth in art. 26.04(b)
of the Texas Code of Criminal Procedure. See Gonzales v. State, 8 S.W.3d 679, 680 (Tex.
App.-Amarillo 1999, no pet.). So too may it consider any other evidence relevant to the
issue of whether appellant "is not financially able to employ counsel." See Tex. Code Crim.
Proc. Ann. art. 1.051(b) (Vernon 2005) (defining an indigent as one "who is not financially
able to employ counsel"); Conrad v. State, 537 S.W.2d 755, 757 (Tex. Crim. App. 1976)
(noting that there are no standards set out for the guidance of trial courts in determining
indigency). However, that appellant previously retained counsel to defend him at trial is
not alone determinative, id., given that indigency must be assessed at the time the issue
arises. Gonzales v. State, 8 S.W.3d at 680. 

 We further direct the district court to issue findings of fact and conclusions of law
addressing the subjects numerically itemized above. Should the district court find that
appellant desires to pursue his appeal, is without legal representation, and is indigent, then
we further direct the court to appoint counsel to assist in the prosecution of the appeal and
to order that a transcript of the trial court proceedings be provided to appellant free of
charge. The name, address, phone number, telefax number, and state bar number of the
counsel who will represent appellant on appeal must also be included in the court's findings
of fact and conclusions of law. Furthermore, the district court shall also cause to be
developed 1) a supplemental clerk's record containing the findings of fact and conclusions
of law and all orders of the district court issued as a result of its hearing on this matter and,
2) a reporter's record transcribing the evidence and argument presented at the hearing on
this matter. Additionally, the district court shall cause the supplemental clerk's record to
be filed with the clerk of this court on or before November 12, 2007. Should additional time
be needed to perform these tasks, the district court may request same on or before
November 12, 2007.

 It is so ordered. 


 Per Curiam


Do not publish. 



 In August 2004, Cahill filed a motion to compel and for sanctions. The partnership's
response to the motion asserted it had responded "fully pursuant to Rule 196.2(b)," (2)
reiterating its objections to the request. The response stated "the only information in
controversy is the value of plaintiff's interest in the partnership," and the information sought
was not relevant to that claim. The response also sought to establish the documents as
trade secrets under Rule of Evidence 507. In support, the partnership attached affidavits
of Whyte and the partnership's accountant. Whyte's affidavit states requests 1, 2, 3, 12
and 16 seek "highly sensitive" financial information, that the partnership keeps the
information in San Francisco "under lock and key," only accessible to Whyte, the
partnership's chief financial officer and "the accountant/bookkeeper," and that the
information was never available to Cahill. Whyte states that disclosure of the information
to competitors could be highly detrimental to West Texas Positron. The affidavit also states
the partnership has made great efforts to maintain the confidentiality of its customer list and
the sales volume of each customer, noting that all billing and pricing is conducted through
the partnership's San Francisco office. Access to that information is limited to the same
three people. 

 Whyte further states that "to the best of his knowledge," Cahill is working for a
competitor, "there is a great risk she would exploit the information to the detriment of West
Texas Positron," and she had once bragged to him about taking trade secret information
from a prior employer. 

 Whyte's affidavit also contains the claim that the only information in controversy in
the suit is the value of Cahill's interest in the partnership. Significantly, the affidavit further
states production of the documents sought by Cahill is unnecessary because the parties
mutually agreed "to have an independent certified public accountant perform an evaluation
of the company in order that a value may be determined for [Cahill's] interest in the
partnership as set forth in the partnership agreement." (3) 

 The accountant's affidavit related the circumstances by which Cahill was given
access to partnership's records in his office in August 2003, and described their
disagreement on that occasion over her contention she was entitled to take with her some
of the information provided. 

 Following a September 3 hearing at which no evidence was admitted, in a
September 20 order the trial court granted Cahill's motion to compel, directing the parties
to enter into a mutually agreeable confidentiality agreement applicable to both parties. The
order also states the confidentiality agreement must provide that invoices with pricing
information will be made available only to Cahill's counsel and experts. The order also
directs Cahill to provide the defendants (4) with a list of all of the customers of the defendants
within her knowledge and the defendants are to produce "all records pertaining to the
customers listed[.]" For other customers, the defendants are allowed to prepare a privilege
log of responsive documents for the court's review. The order further directs Cahill to more
specifically identify documents to be produced under her request number 12 seeking copies
of contractual obligations, including leases and loan agreements.

Applicable Law

 The Texas Supreme Court set out the manner in which Rule of Evidence 507 is to
be applied in discovery, as follows: "First, the party resisting discovery must establish that
the information is a trade secret. The burden then shifts to the requesting party to establish
that the information is necessary for a fair adjudication of its claims. If the requesting party
meets this burden, the trial court should ordinarily compel disclosure of the information,
subject to an appropriate protective order. In each circumstance, the trial court must weigh
the degree of the requesting party's need for the information with the potential harm of
disclosure to the resisting party." In re Continental General Tire, Inc., 979 S.W.2d 609, 613
(Tex. 1998) (orig. proceeding) (footnote omitted). To meet its burden, a party seeking trade
secret information "cannot merely assert unfairness but must demonstrate with specificity
exactly how the lack of the information will impair" fair adjudication of the claim. In re
Bridgestone/Firestone, Inc., 106 S.W.3d 730, 733 (Tex. 2003) (orig. proceeding). 

 The scope of discovery is largely within the discretion of the trial court. See In re
American Optical Corp., 988 S.W.2d 711, 713 (Tex. 1998) (per curiam). A writ of
mandamus is an extraordinary remedy that will issue only to correct a clear abuse of
discretion or the violation of a duty imposed by law, when there is no adequate remedy by
law. In re Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding);
Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding). 
Mandamus is not issued as a matter of right, but at the discretion of the court. Rivercenter
Assocs. v. Rivera, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding); see In re Prudential
Ins. Co. of America, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). It is the relator's
burden to show entitlement to the relief being requested. Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding).

 A trial court abuses its discretion when it "reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law." Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). If a trial court orders production once
trade secret status is proven, but the party seeking production has not shown a necessity
for the requested materials, the trial court's action is an abuse of discretion. In re Bass,
113 S.W.3d 735, 738 (Tex. 2003) (orig. proceeding). 

 A party will not have an adequate remedy by appeal when the appellate court will
be unable to cure the trial court's discovery error, such as by erroneously ordering the
disclosure of trade secrets "without adequate protections to maintain the confidentiality of
the information." Walker, 827 S.W.2d at 843. Application of Law The trial court's order does not say, and the record does not otherwise reflect,
whether the court found the information sought by Cahill contains the partnership's trade
secrets. The language of the order suggests the trial court found at least some of the
information sought to be privileged as a trade secret. Relators contend they are entitled
to mandamus relief from the trial court's order because they conclusively proved the
requested documents contain trade secrets, and Cahill failed to satisfy her burden to
demonstrate the information she seeks is necessary for a fair adjudication of her claims. 
Cahill disputes both contentions. For purposes of this opinion, we will assume relators
have established the information sought by Cahill contains trade secrets owned by the
partnership. (5) 

 We disagree with relators' assertion there was no evidence before the court to
establish that the information sought by Cahill is necessary for a fair adjudication. The trial
court's determination of the necessity of information involves consideration of the parties'
claims and defenses. See In re Bass, 113 S.W.3d at 743 (determining necessity of
information for fair adjudication of claim by analyzing claims asserted); In re
Bridgestone/Firestone, Inc., 106 S.W.3d at 735 (O'Neill, J., concurring) (analysis of
necessity of trade secret information for fair adjudication "must begin" with examination of
relationship between information and material elements of parties' claims and defenses). 
As noted, before the trial court, relators took the position that the subject matter of the
litigation was the value of Cahill's partnership interest, noting Cahill's live pleadings which
asked that the value of her interest be determined by the trier of fact.

 Information before the trial court demonstrated that the partnership to be valued is
closely-held and had then been in existence no more than two years. The affidavit
evidence presented to the trial court by the partnership supports the unsurprising
conclusion that financial information concerning the partnership is needed to determine the
value of an interest in this partnership. As noted, Whyte's affidavit states that information
relevant to that determination had already been given to the Lubbock CPA jointly retained
by the parties "in order that an independent evaluation of the value of [Cahill's] partnership
interest may be determined according to the partnership agreement." (6) Whyte's example
of the information already provided to the jointly-retained CPA is a general ledger,
containing a record of every check written by the partnership. The trial court reasonably
could have concluded that information of such detail from the records of the partnership,
presumably considered by the jointly-retained CPA to be necessary to that determination,
also was necessary to Cahill's ability to pursue judicial determination of the value of her
partnership interest. Further, the general ledger was not the only item of such information
provided the jointly-retained CPA. Whyte's affidavit gives it as an example of the
information provided. 

 The partnership's evidence also demonstrates Cahill has no other source for the
information. (7) Whyte's affidavit expressly states the information concerning customers could
be obtained from only two sources, those being the partnership's records in San Francisco
and the customers themselves, and the customers were subject to confidentiality
agreements in their contracts with the partnership. The affidavit flatly states the other
financial information Cahill seeks "is not ascertainable elsewhere." 

 On this record, we cannot say that a conclusion financial information and information
concerning its largest customers' shares of sales from the records of the limited partnership
is necessary to an adjudication of the value of an interest in the partnership (8) was arbitrary
or unreasonable, or otherwise an abuse of the trial court's discretion.

 There is a further reason relators' petition must be denied. As noted, the
requirement that one seeking mandamus have no adequate remedy by appeal is satisfied
when a court erroneously orders production of trade secrets without adequate protections
to maintain their confidentiality. Walker, 827 S.W.2d at 843. Here, the trial court's order
compelling discovery is conditioned on the parties' entry into a mutually agreeable
confidentiality agreement, permits relators to assert the privilege with respect to information
about some customers and restricts pricing information to Cahill's counsel and experts in
the absence of further court order. Relators argue a protective order may not be effective
to prevent Cahill's improper use of the partnership's claimed trade secrets, but we are
unwilling to issue mandamus on the assumption there is no possible mutually agreeable
confidentiality arrangement which, when coupled with the restrictions contained in the
court's order, would adequately maintain confidentiality of the information. 

 Concluding relators have established neither that the trial court has abused its
discretion nor that they are without other remedy, we deny their petition for writ of
mandamus. We grant relators' motion to file a supplemental brief and deny their motion
for emergency relief. 

 

 James T. Campbell

 Justice



1. Cahill's second amended petition, filed on July 1, alleges the defendants breached
the partnership agreement in several respects, including the denial of access to partnership
records. It asserts her partnership interest was wrongfully forfeited. It further alleges
claims including fraud, breach of fiduciary duty and other duties, and diversion of
partnership assets. The petition seeks to recover the value of her interest in the
partnership, an accounting, compensatory and exemplary damages, attorneys fees, costs
and interest.
2. The response made no mention of Rules of Civil Procedure 193.2, 193.3, or 193.4.
See, e.g., Tex. R. Civ. P. 193.2(f) (stating objection to written discovery request on the
basis of privilege is improper). We do not reach Cahill's contention that relators' petition
should be denied because of their failure to observe the procedural requirements of Rules
193.3 and 193.4 in the trial court, or relators' contention that Cahill waived that complaint. 

3. A bench brief the partnership and general partner presented at the September 3
hearing contains a copy of a July 8, 2004 letter agreement from a Lubbock firm of certified
public accountants addressed to and signed by counsel for relators and Cahill. The letter
states the firm had been retained by both counsel, and describes services to be provided
by the firm including "determining the amount of payment due to an exiting partner in
accordance with the formula set forth in the West Texas Positron, Ltd. partnership
agreement." The record contains no information concerning the results of the firm's work,
but at oral argument on relator's petition for writ of mandamus counsel indicate the work
has not resolved the parties' disagreements.
4. The defendants are listed as the partnership and its general partner. Although
Whyte is a relator in this proceeding, the trial court's order is not directed to him individually.
5. By engaging in the assumption relators have established the information sought
contains trade secrets, we do not reach, and express no opinion on, some interesting
questions involving the assertion of the trade secret privilege by a limited partnership
against a current or former partner. See, e.g., Texas Revised Limited Partnership Act, Tex.
Rev. Civ. Stat. Ann. art. 6132a-1, § 1.07(d) (concerning partner's right to examine records
required to be maintained by partnership "and other information regarding the business,
affairs, and financial condition of the limited partnership as is just and reasonable.") Cf. B
& R Communications v. Lopez, 890 S.W.2d 224 (Tex.App.-Amarillo 1994) (orig.
proceeding) (general partnership). 
6. Cahill does not contend the partnership has waived the privilege, either by providing
her access to some books and records in August 2003 or by providing information to the 
jointly-retained CPA.
7. See In re Bridgestone/Firestone, Inc., 106 S.W.3d at 736 (O'Neill, J., concurring)
(case law teaches trade secret information is generally discoverable when not allowing
discovery would significantly impair party's ability to establish or rebut material element of
a claim or defense, and party's ability is significantly impaired when the information is
unavailable from any other source and no adequate alternative means of proof exist).
8. Our discussion should not be taken as expressing agreement or disagreement with
relators' statement to the trial court that the value of Cahill's partnership interest is the "only
information in controversy" in the suit.