**Opinion issued October 17, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00611-CV

————————————

## IN RE VALERO REFINING–TEXAS, LP, Relator

———————————————————————————————————————

## Original Proceeding on Petition for Writ of Mandamus

———————————————————————————————————————

## O P I N I O N

This is a mandamus proceeding arising from a pretrial discovery dispute.[*] In the underlying proceeding, Valero Refining–Texas, LP contests the Galveston Central Appraisal District's appraisal of its Texas City refinery for purposes of assessing ad valorem property taxes for 2012. *See* TEX. TAX CODE ANN. §§ 42.01,

---

[*] The underlying case is *Valero Refining–Texas, LP v. Galveston Central Appraisal District*, No. 12-CV-2040, in the 56th District Court of Galveston County, Texas, the Hon. Lonnie Cox, presiding.

42.21 (West Supp. 2012). Valero challenges a trial court order compelling it to produce all "projected financial statements, including income statements, balance sheets, and statements of cash flows related to the Property" and all "Documents relating to the refinery yields, costs, and operating economics of the Property for each year" from January 2011 to the present. Valero contends, and GCAD concedes, that the requested information constitutes trade secrets. GCAD contends that its requested discovery is necessary to establish the value of Valero's property.

We conditionally grant mandamus relief.

**Analysis**

Generally, the scope of discovery is within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (citing *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding)); *In re BP Prods. N. Am. Inc.*, 263 S.W.3d 106, 111 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) (citing *In re Colonial Pipeline*, 968 S.W.2d at 941). Mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). The heavy burden of establishing a clear abuse of discretion is on the party resisting discovery. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (citing *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding)). A

clear abuse of discretion occurs when a trial court "'reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *Walker*, 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *Id.* at 840. A clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

Valero contends that the information requested is subject to the trade secret privilege. Texas Rule of Evidence 507 provides:

> A person has a privilege, which may be claimed by the person or the person's agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice. When disclosure is directed, the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require.

TEX. R. EVID. 507. The trade secret privilege seeks to balance two competing interests: a party's intellectual property interest in the trade secret and the fair adjudication of lawsuits. *See In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 612 (Tex. 1998) (orig. proceeding).

A party resisting discovery by asserting the trade secret privilege has the burden to establish that the information is a trade secret. *Id.* at 613. If, as here, the requesting party concedes that the requested information is a trade secret, then the

3

burden shifts to the requesting party to establish that the information is material and necessary for a fair adjudication of the case. *See id.* at 615. Whether a trade secret is necessary to the fair adjudication of a case depends on the nature of the information and context of the case. *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732 (Tex. 2003) (orig. proceeding).

The party seeking to discover a trade secret must make a particularized showing that the information is necessary to the proof of one or more material elements of the claim and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. *See In re Bridgestone/Firestone*, 106 S.W.3d at 731, 732; *In re Cont'l Gen. Tire*, 979 S.W.2d at 611, 613. "It may be theoretically possible for a party to prevail without access to trade secret information and yet be unfair to put him to much weaker proof without the information." *In re Bridgestone/Firestone*, 106 S.W.3d at 732. But the test cannot be satisfied merely by general assertions of unfairness. *Id.* Nor is it enough to show that the information would be useful to the party's expert; rather, the party must show that it is necessary. *See In re Cont'l Gen. Tire*, 979 S.W.2d at 611. If an expert can form an accurate opinion on the relevant subject without the trade secrets, then the information is useful rather than necessary. *See In re XTO Res. I, LP*, 248 S.W.3d 898, 905 (Tex. App.—Fort Worth 2008, orig. proceeding) (holding that party failed to show necessity when expert testified that

4

trade secret information would be useful to prepare report with least amount of uncertainty, but opinion could be formed without it). If an alternative means of proof is available that would not significantly impair the presentation of the case's merits, then the information is not necessary. *See In re Union Pac. R.R.*, 294 S.W.3d 589, 592–93 (Tex. 2009) (orig. proceeding); *In re Cont'l Gen. Tire*, 979 S.W.2d at 615. The court must weigh the degree of the requesting party's need for the information against the potential harm of disclosure to the resisting party. *In re Cont'l Gen. Tire*, 979 S.W.2d at 613. If the requesting party establishes that the documents are necessary, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order. *Id.*

GCAD concedes that the requested information consists of trade secrets. We therefore determine whether the trade secrets are necessary to a fair adjudication of the case. *See In re Union Pac. R.R.*, 294 S.W.3d at 592; *In re Cont'l Gen. Tire*, 979 S.W.2d at 613. Taxable property is generally appraised at its market value. *See* TEX. TAX CODE ANN. § 23.01(a) (West Supp. 2012). There are three potential alternate methods of determining the market value of property: cost, income, and market data comparison. *See id.* § 23.0101 (West 2008). GCAD asserts that the requested records are necessary to complete an income-method appraisal of the property. An expert for GCAD averred that the income method applied because it is a valid and recognized method of determining the market

value of refineries that buyers and sellers of refineries often use. GCAD also produced an industry article about appraising refineries that analyzes the application of each of the three appraisal methods to refineries. The article notes the benefits and shortfalls of each method and concludes that because none of the three are perfect, the most accurate appraisal would take into consideration all three appraisal methods.

Valero disputes the relevance of an income-based valuation in the context of appraising its refinery. But even assuming the relevance of the discovery requested by GCAD, to overcome the trade-secret privilege the evidence must be necessary and not merely relevant. *See In re Bridgestone/Firestone*, 106 S.W.3d at 732–33; *In re Cont'l Gen. Tire*, 979 S.W.2d at 611; *In re XTO Res. I*, 248 S.W.3d at 905. GCAD must show that without the trade secrets, its ability to defend its appraisal will be significantly impaired. *See In re Union Pacific R.R.*, 294 S.W.3d at 592; *In re Bridgestone/Firestone*, 106 S.W.3d at 733. GCAD's expert did not conclude that the cost or market-data-comparison methods are inappropriate or inapplicable. Nor did he conclude that the income method is the most appropriate valuation method or that it is essential to create an accurate appraisal. The industry article produced by GCAD indicates that an ideal appraisal considers all three appraisal methods, but it also indicates that, depending on the circumstances, each of the three methods can produce a competent appraisal. The information

6

requested by GCAD is therefore useful in that it will facilitate an income-method appraisal and perhaps reach an appraisal with more certainty. *See In re Bridgestone/Firestone,* 106 S.W.3d at 733; *In re XTO Res. I*, 248 S.W.3d at 905. Yet, it is not necessary, because an accurate appraisal can be completed without it. *See In re Bridgestone/Firestone,* 106 S.W.3d at 733; *In re XTO Res. I*, 248 S.W.3d at 905. Moreover, the record before us does not establish that an income-based valuation is not possible without the requested discovery.

GCAD contends that Tax Code section 23.0101 requires it to appraise the property by all three methods to determine the most appropriate method of appraisal. Section 23.0101 provides that the appraiser shall "consider" the three appraisal methods and "use the most appropriate method." TEX. TAX CODE ANN. § 23.0101. This statute requires that the appraiser determine which of the three appraisal methods is the most appropriate given the individual characteristics of the property that affect the property's market value and then apply that method. *See id.* § 23.01(b) (providing that "each property shall be appraised based upon the individual characteristics that affect the property's market value"). It does not require the appraiser to use all three appraisal methods, as confirmed by other provisions of the Tax Code that only apply "if" certain methods are used. *See id.* § 23.011 (West 2008) (imposing requirements on appraiser "[i]f the chief appraiser uses the cost method of appraisal"); *id.* § 23.012 (imposing requirements on

7

appraiser "[i]f the income method of appraisal is the most appropriate method"); *id.* § 23.013 (West Supp. 2012) (imposing requirements on appraiser "[i]f the chief appraiser uses the market data comparison method of appraisal"). If the use of all three methods were mandatory, these provisions would not be conditioned on the use of one particular method.

Accordingly, GCAD has failed to adequately demonstrate its need for the requested information, because alternate methods of appraisal are available and it has presented no evidence that those methods will not produce competent evidence of the market value of the refinery. Valero asserts that releasing the confidential financial information covered by the requests for production will allow competitors to undercut its prices and give those competitors a significant competitive advantage. The Supreme Court of Texas has recognized that the release of confidential financial information such as pricing and production costs can result in significant harm. *See In re Union Pac. R.R.*, 294 S.W.3d at 592–93.

GCAD contends that an existing protective order in the case limiting disclosure of confidential information to parties, experts who agree not to disclose the information, and attorneys in the case eliminates any potential harm from the disclosure of the trade secrets. However, a protective order limiting who can view this type of confidential financial information does not ensure that release of the information will not violate the trade secret privilege. *See id.* at 593. Moreover,

8

the ability of a protective order to limit harm from the disclosure of trade secrets is only a factor if the trade secrets are necessary and must be disclosed. *See In re Cont'l Gen. Tire*, 979 S.W.2d at 613.

Even assuming that the discovery of Valero's trade secrets would be necessary for GCAD to conduct an income method appraisal, two other valid methods of appraisal are available. GCAD has not shown that these methods will not provide a competent appraisal and evidence of the market value of the property. Accordingly, GCAD has failed to meet its burden of establishing that the information is material and necessary to its case. *See id.* Valero therefore should not have been compelled to produce its trade secrets, and we need not address Valero's further contentions that the requests are overbroad or unduly burdensome.

## Conclusion

We conditionally grant Valero's petition for writ of mandamus. GCAD concedes that its two requests for production seek information protected by the trade secret privilege, and we conclude that GCAD has not satisfied its burden of demonstrating a necessity for that evidence so as to overcome the privilege. The writ will issue only if the trial court fails to comply with our directive.


Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.