**Petition for Writ of Mandamus Conditionally Granted and Opinion filed December 23, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00849-CV

---

## IN RE 4X INDUSTRIAL, LLC, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-65517**

---

## O P I N I O N

Relator, 4X Industrial, LLC filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, 4X Industrial asks this court to compel the Honorable Dawn Rogers, presiding judge of the 334th District Court of Harris County, to vacate her March 29, 2021 order compelling 4X Industrial to produce documents that it claims are protected from

disclosure by the trade secrets privilege.[1] *See* Tex. R. Evid. 507. We conditionally grant the petition.

## Background

4X Industrial and real party in interest Russell Marine are direct competitors in the railroad construction industry with common clients such as Union Pacific and Kansas City Southern. Russell Marine employed in its railroad division Frank Thielen as vice president of operations and head of the railroad division and Esteban Ruiz as a project engineer. According to Russell Marine, Thielen and Ruiz were entrusted with Russell Marine's trades secrets for the sole purpose of preparing bid proposals, servicing customer inquiries and requests, managing projects, and marketing railroad construction business. Russell Marine asserts that its protected trade secret information includes bid proposals, pricing information, bidding and pricing strategy and processes, targeted projects, prospective projects, client lists, client information, budgets, estimates, marketing plans, and project management processes and procedures.

Russell Marine terminated Thielen in April 2019, and 4X Industrial hired him two months later. Russell Marine terminated Ruiz in August 2019, and 4X Industrial

---

[1] When 4X Industrial filed this original proceeding, the judge of the 334th District Court was the Honorable Steven Kirkland. Judge Kirkland signed a December 13, 2020 order, which was the subject of the mandamus proceeding when filed. Judge Kirkland ceased to hold office of the 334th District Court on January 1, 2021. We abated this original proceeding to permit his successor, Judge Rogers, to reconsider Judge Kirkland's December 13, 2020 ruling. On March 29, 2021, Judge Rogers signed an order adopting Judge Kirkland's December 13, 2020 order in all respects. We now consider whether 4X Industrial is entitled to mandamus relief as to Judge Rogers' order.

hired him that same month. Russell Marine alleges that, prior to leaving its employ, Ruiz downloaded 15,000 pages of Russell Marine trade secrets onto thumb drives, which Ruiz took with him upon his termination. Russell Marine further asserts that a forensic examination of Ruiz's computer confirmed that Ruiz had downloaded Russell Marine's trade secrets, including information regarding pricing, budgeting, bidding and pricing strategies and processes, payroll information, and project management process and procedures.

Claiming that 4X Industrial is using its trade secrets to compete for railroad projects, Russell Marine sued 4X Industrial, Thielen, and Ruiz for trade secrets misappropriation and other claims on September 11, 2019. This mandamus proceeding involves 4X Industrial's objections to the following sixteen requests for production of documents served by Russell Marine:

**REQUEST FOR PRODUCTION NO. 15:**

All documents relating to any bids, proposals, job estimates, project budgets or project management processes and procedures for any Projects, prepared by Thielen during his employment by 4X.

**REQUEST FOR PRODUCTION NO. 16:**

All documents relating to any bids, proposals, job estimates, project budgets or project management processes and procedures for any Projects, prepared by Ruiz during his employment by 4X.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all correspondence or communication of any kind whatsoever (including without limitation any texts, emails or email attachments) relating to any bids, proposals, job estimates, project budgets or project

3

management processes and procedures for any Projects, prepared by Thielen during his employment by 4X.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all correspondence or communication of any kind whatsoever (including without limitation any texts, emails or email attachments) relating to any bids, proposals, job estimates, project budgets or project management processes and procedures for any Projects, prepared by Ruiz during his employment by 4X.

**REQUEST FOR PRODUCTION NO. 19:**

All documents (including email and documents attached to email) relating to any money, compensation or payments made to 4X on any Project worked on by Thielen during his employment by 4X.

**REQUEST FOR PRODUCTION NO. 20:**

All documents (including email and documents attached to email) relating to any money, compensation or payments made to 4X on any Project worked on by Ruiz during his employment by 4X.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all correspondence or communication of any kind whatsoever (including without limitation any texts, emails or email attachments) relating to any money, compensation or payments made to 4X on any Project worked on by Thielen during his employment by 4X.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all correspondence or communication of any kind whatsoever (including without limitation any texts, emails or email attachments) relating to any money, compensation or payments made to 4X on any Project worked on by Ruiz during his employment by 4X.

*    *    *

**REQUEST FOR PRODUCTION NO. 47:**

All documents relating to any bids, proposals, job estimates, project budgets or project management processes and procedures for any Projects, prepared by 4X during the twelve (12) months prior to Thielen's employment by 4X.

**REQUEST FOR PRODUCTION NO. 48:**

All bid estimates submitted by 4X to UP since Thielen became employed by 4X.

**REQUEST FOR PRODUCTION NO. 49:**

All correspondence or communication of any kind whatsoever (including without limitation any texts, emails or email attachments) relating to any bid estimates submitted by 4X to UP since Thielen became employed by 4X.

**REQUEST FOR PRODUCTION NO. 50:**

All bid estimates submitted by 4X to KSU since Thielen became employed by 4X.

**REQUEST FOR PRODUCTION NO. 51:**

All correspondence or communication of any kind whatsoever (including without limitation any texts, emails or email attachments) relating to any bid estimates submitted by 4X to KSU since Thielen became employed by 4X.

**REQUEST FOR PRODUCTION NO. 52:**

All documents relating to any bids, proposals, job estimates, project budgets or project management processes and procedures for any Projects, prepared by 4X during the twelve (12) months prior to Ruiz's employment by 4X.

**REQUEST FOR PRODUCTION NO. 53:**

All documents (including email and documents attached to email) relating to any money, compensation or payments made to 4X on any Project bid and awarded to 4X during the twelve (12) months prior to Thielen's employment by 4X.

**REQUEST FOR PRODUCTION NO. 54:**

All documents (including email and documents attached to email) relating to any money, compensation or payments made to 4X on any Project bid and awarded to 4X during the twelve (12) months prior to Ruiz's employment by 4X.

Among other objections, 4X Industrial invoked the trade secrets privilege in response to the above requests. 4X Industrial stated, however, that it would produce "bid summaries reflecting bids prepared by Defendant Thielen and/or Defendant Ruiz that were won by Defendant 4X Industrial from either Kansas City Southern Railway Company or Union Pacific in which Plaintiff Russell Marine was also a bidder" following the entry of a protective order and "after Plaintiff Russell Marine identifies which projects for Kansas City Southern Railway Company or Union Pacific [it] bid on during the Relevant Time Frame."

On March 4, 2020, the trial court signed a confidentiality order. Subsequently, on March 16, 2020, 4X Industrial produced 220 pages of documents, which included bid summaries for projects prior to and after 4X Industrial hired Thielen and Ruiz. Russell Marine asserted that 4X Industrial's production was deficient because it did not include documents related to 4X Industrial's formulation of railroad project bids, proposals, job estimates, project budgets, project management processes, records of payment and communications.

6

In the meantime, 4X Industrial asked Russell Marine by interrogatory to identify all trade secrets it contended 4X Industrial misappropriated or used.[2] In response, Russell Marine referred 4X Industrial to approximately 15,000 pages of documents, which Russell Marine claimed Ruiz saved to his computer and later deleted.

In September 2020, Russell Marine's counsel emailed 4X Industrial's counsel, identifying the perceived deficiencies in 4X Industrial's discovery responses. Specifically, Russell Marine requested supplementation of: "all internal worksheets showing how the bid sheet numbers were arrived at, payroll expenses, drafts of estimates and bids, final estimates and bids, notes, invoices from subcontractors and equipment suppliers, equipment rental contracts, records of payment and internal and external communications related to each bid and each job", as well as bid information on projects that 4X Industrial may have bid but was not awarded. Further, Russell Marine's counsel asked 4X Industrial's counsel to de-designate 4X Industrial's documents to a "Confidential" classification only or allow up to four individuals from Russell Marine to view the "Attorney's Eyes Only" documents for the purpose of assisting its counsel in preparing for trial.

The record is unclear as to 4X Industrial's response to Russell Marine's September email, but approximately one month later, Russell Marine filed a motion

---

[2] Interrogatory No.1 stated:

Please identify and describe in reasonable detail each piece of Russell Marine Information that You allege that Defendants misappropriated, converted, or otherwise wrongfully used. If the Russell Marine Information was not disclosed in writing but exists in written form, please identify the bates number(s) of the Document(s) containing the Russell Marine Information.

to compel responses to the sixteen requests for production at issue and also moved to de-designate the attorneys'-eyes-only designation of certain documents. In its motion to compel, Russell Marine asserted that, although 4X Industrial had produced its final bids for Union Pacific and Kansas City, it can only determine if 4X Industrial had usurped and used its proprietary, confidential, and trade secret information by examining the supporting worksheets, drafts, supporting invoices from third-parties, budgets, payroll information, project management processes and procedures, and related backup information relating to those bids. In other words, Russell Marine asserted that it could not identify every trade secret that Ruiz, Thielen, and 4X misappropriated and used for their benefit until it had the opportunity to review 4X Industrial's responsive documents.

In response to the motion to compel, 4X Industrial argued that the information Russell Marine sought constitutes 4X Industrial's trade secrets. In support of that contention, 4X Industrial attached an affidavit of its chief financial officer. Additionally, 4X Industrial argued that because it had established that the requested documents were trade secrets, the burden shifted to Russell Marine to demonstrate that the information is necessary for a fair adjudication of its claims. According to 4X Industrial, Russell Marine had not made the required showing.

In a reply, Russell Marine contended that its case will be materially impaired if it cannot determine the extent to which its confidential information was misused. Russell Marine argued that 4X Industrial should not be able to withhold documents based upon a "trade secret" argument when there is a likelihood that the information it seeks to hide contains Russell Marine's trade secrets.

The trial court signed an order granting the motion to compel as to request for production numbers 15-22 and 47-54 and directing 4X Industrial to produce all internal worksheets and documents showing how the bid sheet numbers on each Union Pacific and each Kansas City bid were arrived at, payroll expenses, drafts of estimates and bids, final estimates and bids, notes, invoices from subcontractors and equipment suppliers, anticipated profits, equipment rental contracts, records of payment, and external and internal communications related to each bid and each job, for the six-month period prior to April 2019 and for the period from April 2019 to the present, with timely supplements through the time of trial. The trial court further ordered 4X Industrial to produce all documents relating to any money, compensation, or payments made to 4X Industrial on any Union Pacific or Kansas City bid awarded to 4X Industrial for the six months prior to April 2019 and for the period from April 2019 to the present. The trial court also ordered that "if the trade secrets are entitled to protection, then they shall be produced pursuant to the Agreed Confidentiality Order."

4X Industrial filed this original proceeding challenging the above order. 4X Industrial contends that the trial court abused its discretion because the information at issue is protected by the trade secrets privilege, and Russell Marine failed to demonstrate that the materials are necessary for a fair adjudication of its claims. 4X Industrial also asserts that it does not have an adequate remedy by appeal.

**Mandamus Standard of Review**

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by

appeal. *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302-03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The relator must establish that the trial court could reasonably have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Appeal is not an adequate remedy when the appellate court would not be able to cure the trial court's discovery error on appeal. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) (per curiam); *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding).

**Analysis**

"A trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). Texas Rule of Evidence 507 provides for the protection of trade secrets. *See* Tex. R. Evid. 507. The rule entitles a party to refuse to disclose trade secrets the party owns unless the court finds that nondisclosure "will tend to conceal fraud or otherwise work injustice." *Id.* 507(a).

The trade secrets privilege seeks to accommodate two competing interests. *In re Continental Gen. Tire, Inc.*, 979 S.W.2d 609, 612 (Tex. 1998) (orig. proceeding);

10

*In re Cooper Tire & Rubber Co.*, 313 S.W.3d 910, 915 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding). First, it recognizes that trade secrets are an important property interest, worthy of protection. *In re Continental Gen. Tire, Inc.*, 979 S.W.2d at 612. Second, it recognizes the importance placed on fair adjudication of lawsuits. *Id.* Rule 507 accommodates both interests by requiring a party to disclose a trade secret only if necessary to prevent "fraud" or "injustice." *Id.* Disclosure is required only if necessary for a fair adjudication of the requesting party's claims or defenses. *Id.*

The party asserting the trade secrets privilege has the initial burden to prove that the information sought qualifies as a trade secret. *In re Bass*, 113 S.W.3d 735, 737 (Tex. 2003) (orig. proceeding). If the resisting party meets its burden, the burden shifts to the party seeking the trade secret discovery to establish that the information is necessary for a fair adjudication of its claim. *Id.* It is an abuse of discretion for the trial court to order production once trade secret status is proven if the party seeking production has not shown necessity for the requested materials. *Id.* at 738.

## A. 4X Industrial proved that the requested information constitutes trade secrets.

We turn first to whether 4X Industrial met its initial burden, which Russell Marine disputes.

To determine whether a trade secret exists, we weigh the following six factors in the context of the surrounding circumstances: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by

employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009) (orig. proceeding) (per curiam); *In re Cooper Tire & Rubber Co.*, 313 S.W.3d at 915. The party claiming a trade secret is not required to satisfy all six factors because trade secrets do not fit neatly into each factor every time. *In re Bass*, 113 S.W.3d at 740.

In support of its claim that the requested documents constitute trade secrets, 4X Industrial submitted the affidavit of its chief financial officer, John Warren. Warren attested to the following:

> . . .
>
> 5. The documents sought by Russell Marine in the Production Requests and the Motion would encompass virtually every document in 4X Industrial's possession related to its customers Union Pacific and Kansas City Southern. The documents include all of 4X lndustrial's internal strategy relating to Union Pacific and Kansas City Southern, including the supporting bid worksheets, bid drafts, budgets, payroll information, project management processes and procedures, and all related backup information that supports a bid. The documents sought seek internal strategy communications relating to the bids submitted to Union Pacific and Kansas City Southern and payment documents from these customers. Producing these documents would allow Russell Marine to calculate 4X Industrial's profits on Union Pacific and Kansas City Southern projects, what costs are assumed for these projects, and the markup applied for the inputs to these projects for labor, material, equipment, and other costs.

6.  . . . These sweeping requests encompass documents that contain information that is highly confidential and proprietary to 4X Industrial. The internal backup for bids contain confidential information that is not present in the bids provided to customers.  In addition, these documents contain trade secrets that should be protected from public disclosure, especially given that Russell Marine is a direct competitor.

. . .

8.  The information sought by Russell Marine is not publicly available. This non-public information allows 4X Industrial to compete in the highly competitive market for railroad construction projects.  In particular, the backup bid documents will divulge how 4X Industrial determines its bidding strategy.  These documents could allow Russell Marine to estimate 4X Industrial's bids, and severely undermine 4X Industrial's likelihood of success in future competitive bids.

9.  The documents seek trade secrets and confidential information, the disclosure of which would cause direct and substantial harm to 4X Industrial.  4X Industrial has spent years acquiring expertise in analyzing and developing the inputs for its final bids, including the markup on costs and predicting the duration of a project. 4X Industrial derives independent economic value from the fact that its strategy remains confidential and is withheld from its competitors.

10.  4X Industrial has consistently and rigorously policed the confidentiality of its confidential business strategies.  This information is not publicly available and is not provided to customers or other third-parties.

Regarding the first factor—the extent to which the information is known outside 4X Industrial's business—Warren's affidavit identified the nature of the internal information subject to the request and demonstrated that the information is not known outside of 4X Industrial.  He stated that the information is highly confidential and proprietary to 4X Industrial.

13

Warren's affidavit addressed part of the second factor: the extent to which the information is known by employees and others involved in the business. Although he did not state the extent to which the information is known by employees, he asserted that the internal backup for bids contain confidential information that is not present in the bids provided to customers.

Regarding the third factor, Warren averred that 4X Industrial diligently protects the confidentiality of the information, and 4X Industrial does not provide the information to its customers or third parties. He stated that 4X Industrial has consistently and rigorously policed the confidentiality of its confidential business strategies.

Regarding the fourth factor, Warren asserted that the information has significant value to 4X Industrial's business and its competitors because it allows 4X Industrial to compete in the highly competitive market for railroad construction projects, it shows how 4X Industrial determines its bid strategy, and it could allow a competitor such as Russell Marine to estimate 4X Industrial's bids.

Regarding the fifth factor, Warren attested that 4X Industrial has spent years acquiring expertise in analyzing and developing the inputs for its final bids.

Warren's affidavit does not appear to address the sixth factor.

4X Industrial presented evidence on most of the factors, and it is not required to prove all six factors. *See In re Bass*, 113 S.W.3d at 740; *In re Cooper Tire & Rubber Co.*, 313 S.W.3d at 918. Weighing the factors in the context of the surrounding circumstances, we conclude that 4X Industrial has established that the requested documents contain trade secrets. *See In re Union Pac. R.R. Co.*, 294

14

S.W.3d at 592. Because 4X Industrial met its burden to establish that the documents contain trade secrets, the burden shifted to Russell Marine to establish that discovery of the information is necessary for a fair adjudication of its claims. *See In re Bass*, 113 S.W.3d at 737; *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732 (Tex. 2003) (orig. proceeding).

**B.      Russell Marine has not established the information is necessary to a fair adjudication of its claims.**

Whether the requested information is necessary to a fair adjudication of a party's claims depends on the nature of the information and the context of the case. *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d at 732. As the supreme court has made clear, this showing requires more than general assertions of unfairness or merely that the information is relevant. *See id*.; *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 613-14. Russell Marine must make a "particularized showing" that the information is necessary to prove one or more material elements of its claim and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. *In re Valero Ref.-Tex., L.P.*, 415 S.W.3d 567, 570 (Tex. App.— Houston [1st Dist.] 2013, orig. proceeding) (citing *In re Bridgestone/Firestone*, 106 S.W.3d at 731, 732; *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 611, 613). The party seeking trade secret information "cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d at 733; *In re Cooper Tire & Rubber Co.*, 313 S.W.3d at 915.

15

As several courts have stated, this is a "heightened burden," *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 613-14, and requires the requesting party to present evidence. *See id.* at 615; *In re Konsberg, Inc.*, 563 S.W.3d 915, 921-23 (Tex. App.—Beaumont 2018, orig. proceeding); *In re Daimler Trucks N.A., LLC*, 551 S.W.3d 833, 841 (Tex. App.—San Antonio 2018, orig. proceeding); *In re Waste Mgmt. of Tex., Inc.*, 286 S.W.3d 615, 618 (Tex. App.—Texarkana 2009, orig. proceeding); *In re XTO I, LP*, 248 S.W.3d 898, 905 n.1 (Tex. App—Fort Worth 2008, orig. proceeding); *In re Diamond Shamrock Ref. Co.*, No. 07-06-0315-CV, 2007 WL 63370, at *1 (Tex. App.—Amarillo Jan. 10, 2007, orig. proceeding) (mem. op.); *see also In re Cooper Tire & Rubber Co.*, 313 S.W.3d at 918-19.

Russell Marine asserts that it met its burden because it already has "substantial circumstantial evidence that Ruiz misappropriated thousands of pages of its trade secrets to enable the undercutting of Russell Marine's bids to key customers."[3] Russell Marine argues that it cannot adequately present its claims to a jury without an analysis of 4X Industrial's records showing that 4X Industrial used Russell Marine's trade secrets. Russell Marine maintains that, because it is unlikely that 4X Industrial will produce "smoking gun" documents that directly demonstrate that 4X Industrial used Russell Marine's trade secrets, it will have to compare 4X Industrial's documents from bids before Thielen joined 4X Industrial to documents and bids generated after Thielen and Ruiz joined 4X Industrial to establish that 4X Industrial used Russell Marine's trade secrets. Moreover, Russell Marine asserts

---

[3] We presume that the claimed misappropriated information constitutes Russell Marine's trade secrets.

that the measure of damages is 4X Industrial's profit from any use of Russell Marine's trade secrets.

Russell Marine relies on an opinion from the United States District Court for the Southern District of Texas in support of its position that it is entitled to discovery of 4X Industrial's trade secrets to determine whether 4X Industrial misappropriated Russell Marine's trade secrets. *See M-I LLC v. Stelly*, 733 F. Supp. 2d 759 (S.D. Tex. 2010). In *Stelly*, M-I LLC ("M-I") was an oilfield contractor that provided "products and services to oilfield drillers and operator who are involved in successful completion of downhole operations and the cleanout of wellbores." *Id.* A former employee of the plaintiff, M-I, formed his own company and hired M-I employees, Stelly and Squyres. *Id.* at 770. M-I alleged that Stelly and Squyres stole its trade secrets and claimed that the defendants designed wellbore tools by relying on M-I's trade secrets. *Id.*

The defendants filed a motion for protection from discovery of their trade secret information, arguing that M-I had failed to establish that the information was necessary for a fair adjudication of its claim. *Id.* at 800. The court observed that M-I had stated a claim for misappropriation of trade secrets and sought discovery in order to support its claim with evidence. *Id.* at 802. In other words, M-I did not seek the trade secrets to prove a tangential or connected claim but sought the trade secrets to bolster its claim that its trade secrets had been misappropriated. *Id.*

The third element of trade secret misappropriation required M-I to prove that the defendants were using its trade secrets, i.e., incorporating M-I's design features. *Id.* M-I submitted the affidavits of two experts, who stated that they could not come

17

to any determination of whether the defendants had misappropriated M-I's trade secrets without first inspecting tool drawings and other proprietary information. *Id.* The court held that "[t]he trade secrets are both relevant and necessary for that reason" and "[n]ot being able to argue that certain tool diameters were identical, or that [the defendants] adopted the same unique material as M-I in the construction of its tools, would be fatal to M-I's claims." *Id.*

M-I also presented the deposition testimony of engineers, who, stopping short of claiming the defendants' tools were exact copies of MIs tools, were able to point to specific design features that were unique to M-I before the defendants launched their suite of wellbore cleanout tools. *Id.* The engineers pointed to features that they "strongly" believed the defendants copied from M-I. *Id.* at 802-03. At the very least, the engineers boosted M-I's argument that examining the drawings of the tools and other information was necessary to fairly adjudicate its claim for misappropriation of trade secrets. *Id.* at 803.

The court concluded that M-I would not be able to prove misappropriation of trade secrets, which required that it show that the defendants had actually incorporated trade secrets into their own competitive products, without examining the defendants' tool drawings and other proprietary information. *Id.* at 804. Also, M-I had proffered evidence on the issue of necessity, and that evidence established that "experts must have access to proprietary information in order to prepare their conclusions." *Id.* The information was necessary, not simply useful, for M-I's experts. *Id.* The court, however, observed that M-I would need to produce its own tool drawings and other information to the defendants so that they could build their

defense in this case. *Id.* The court was satisfied that, with both parties disclosing the material at the heart of their companies' success, each would have strong incentives to rigorously apply the protective order and safeguard one another's trade secrets. *Id.*

*Stelly* is distinguishable from the case at hand. M-I offered evidence, which included the affidavits of two experts, who attested that "they cannot come to any determination" as to whether the defendants had misappropriated M-I in their "own tool line without first inspecting tools drawings and other proprietary information." *Id.* at 802. M-I also offered deposition testimony of engineers, who identified specific design features that were unique to M-I before the defendants launched their suite of wellbore cleanout tools. *Id.* at 802. The court determined that, at the very least, the engineers' testimony boosted M-I's "argument that examining drawings of these tools, and other information, is necessary to fairly adjudicate its misappropriation of trade secrets claim." *Id.* at 803. In contrast to the claimants in *Stelly*, Russell Marine did not offer evidence of a similar character to support its argument that 4X Industrial's trade secrets are necessary for a fair adjudication of its case.

Emphasizing the lack of evidence, 4X Industrial points out that Russell Marine did not specify which materials it claims that 4X Industrial misappropriated, and it did not file any of the subject material with the trial court, introduce it into evidence, offer it for in camera review, or describe it to the trial court in any detail. Thus, 4X Industrial contends that Russell Marine did not describe with particularity how the trade secret information is required to prove its claims. 4X Industrial cites

*In re PrairieSmarts, LLC*, 421 S.W.3d 296 (Tex. App.—Fort Worth 2018, orig. proceeding), in support of its argument that Russell Marine has not made the required a particularized showing of necessity under Rule 507. There, four former employees of TD Ameritrade changed employment to PrairieSmarts. *Id.* at 299. Subsequently, PrairieSmarts filed a patent application for a program called PortfolioDefense. *Id.* at 300. TD Ameritrade then filed a rule 202 petition, seeking pre-suit depositions and alleging that it appeared likely that PrairieSmarts' employees had, in designing the program, misappropriated TD Ameritrade's confidential and proprietary assets in violation of nondisclosure provisions in their respective employment contracts with TD Ameritrade. *Id.* PrairieSmarts objected to the depositions and the document production on the basis that TD Ameritrade was seeking privileged trade secret information. *Id.*

TD Ameritrade argued that the circumstances constituted "smoke" and "red flags" or provided "the indicia of a potential appropriation of trade secrets case," sufficient to justify the requested discovery. *Id.* TD Ameritrade argued that the following facts justified its rule 202 pre-suit discovery:

> the fact that three of the four PrairieSmarts principals were directly responsible for TD Ameritrade's confidential risk analysis; the fact that PrairieSmarts's principals have thirty-one combined years of TD Ameritrade tenure; the fact that five days after Dr. Piccinini left TD Ameritrade, he co-founded PrairieSmarts; the fact that three months after Rockwell started working at PrairieSmarts, a patent application was filed for PortfolioDefense[TM], while it took fourteen months after Dr. Piccinini's hire at TD Ameritrade until the Profit Margin application was submitted to FINRA; the fact that similarities exist between the two products—TD Ameritrade contends four matching components are observable by comparing PrairieSmarts's website and

the FINRA application for Portfolio Margin; and the fact that the products have nearly identical outcomes, which TD Ameritrade explained was PortfolioDefense™'s having nearly the same predictive capability as TD Ameritrade's Portfolio Margin.

*Id.* at 300-01.

TD Ameritrade argued that these "red flags" "established 'that there is a significant advantage to be gained for [TD Ameritrade] to do some investigation, some discovery to see how these concepts that line up on both sides are actually performed and whether they are performed using confidential information [from] TD Ameritrade.'" *Id.* at 301. PrairieSmarts argued that TD Ameritrade should not be allowed to "look 'under the hood' at PortfolioDefense™ only to determine that it is not based on TD Ameritrade's confidential or proprietary assets." *Id.* The trial court granted the rule 202 petition. *Id.* at 302.

In the subsequent mandamus proceeding, TD Ameritrade asserted that the facts showed "highly suspect circumstances at play," establishing necessity because "the [trade secret] information at issue is the very subject of TD Ameritrade's claim of misuse or misappropriation." *Id.* at 308. The court of appeals held that the circumstances cited by TD Ameritrade were relevant to establishing whether it had met its rule 202 burden. *Id.* at 308-09. However, those facts did not rise to the level of a particularized showing that PrairieSmarts's trade secret information was necessary to enable TD Ameritrade to prove one or more material elements of its claims against PrairieSmarts or that it was reasonable to conclude that the information sought was essential to a fair resolution of a misuse of misappropriation lawsuit against Prairie Smarts under rule 507. *Id.* at 309.

Here, Russell Marine maintains that it cannot determine whether 4X Industrial used Russell Marine's trade secret information without comparing the worksheets, drafts, supporting invoices from third-parties, budgets, payroll information, project management processes and procedures, and related backup information supporting 4X Industrial's bids from before Thielen's and Ruiz's joining 4X Industrial to those bids generated after they had started working for 4X Industrial. According to Russell Marine, it cannot be more specific about its claim for misappropriated trade secrets until it has had the opportunity to review 4X Industrial's supporting bid documents.

Based on the record before us, we conclude Russell Marine has not made the required "particularized showing" that the information sought is necessary to establish its claim for trade secret misappropriation and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. *See In re Valero Ref.-Tex., LP*, 415 S.W.3d at 570 (citing *In re Bridgestone/Firestone*, 106 S.W.3d at 731, 732; *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 611, 613). The supreme court has made clear that this is an evidentiary burden, and Russell Marine has not presented evidence demonstrating that access to 4X Industrial's trade secrets is necessary for a fair adjudication of its misappropriation claim. *See In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 615 (observing that plaintiff had not presented evidence supporting theory justifying discovery of trade secrets and holding plaintiff had not carried burden under rule 507); *In re Waste Mgmt. of Tex., Inc.*, 286 S.W.3d at 618 (holding that trial court erred by ordering production of trade secret information when plaintiffs did not offer any evidence showing that such information was necessary to fair adjudication of claims); *In re XTO I, LP*, 248 S.W.3d at 905 n.1 (stating that argument of counsel is

insufficient to support discovery of trade secrets; "a party must present evidence"); *In re Diamond Shamrock Ref. Co.*, 2007 WL 63370, at \*1 ("[T]the litigant must satisfy the test through the presentation of competent evidence. If it does not, then compelling disclosure amounts to an instance of abused discretion warranting mandamus relief.").

To be sure, one of Russell Marine's claims is for trade secret misappropriation, which was the case in *Stelly*. This fact also distinguishes the present dispute from cases like *Cooper Tire & Rubber* and others that involved personal injury or product liability claims, where the sought-after trade secrets were collateral to those claims. For that reason, Russell Marine's pleading, on its face, shows that a dispute over the substance of trade secrets is the core dispute in this case. To establish liability for misappropriation of trade secrets, Russell Marine will have to prove that it disclosed a trade secret to the defendants, in confidence, and that one or more of the defendants breached this confidence and made unauthorized use of the secret, causing damage to Russell Marine. *See RSM Prod. Corp. v. Global Petrol. Grp.*, 507 S.W.3d 383, 393 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Bancservices Grp., Inc. v. Strunk & Assocs., L.P.*, No. 14-03-00797-CV, 2005 WL 2674985, at \*4 (Tex. App.—Houston [14th Dist.] Oct. 20, 2005, pet. denied) (mem. op.). Nonetheless, the parties have not directed us to a case relieving a party seeking discovery of trade secrets from its evidentiary burden to show that they are necessary for a fair adjudication of the claim, even when the claim at issue is for trade secret misappropriation.

Russell Marine asserts it has "substantial circumstantial evidence that Ruiz misappropriated thousands of pages of its trade secrets to enable undercutting of Russell Marine's bids to key customers." Russell Marine attached to its petition the declaration of its President, who testified that a forensic examination of Ruiz's computer uncovered evidence that Ruiz, without permission, copied Russell Marine's trade secrets and downloaded them onto personal thumb drives just before leaving Russell Marine's employ. Ruiz then attempted to "conceal his theft by deleting all emails and all Trade Secret information saved on his office computer." According to Russell Marine, Ruiz's described conduct, combined with the events related to Russell Marine's termination of Thielen and Ruiz and 4X Industrial's subsequent hiring of them, warrant independent verification through 4X Industrial's trade secrets.

The affidavit of Russell Marine's President is certainly relevant to many of the elements Russell Marine must prove to prevail on its trade secrets misappropriation claim. Assuming its truth, the affidavit presents some evidence that Russell Marine disclosed trade secrets to Ruiz, in confidence, and that Ruiz breached this confidence. It also explains why 4X Industrial would be interested in the information Ruiz allegedly took. Nonetheless, it does not provide any "particularized" or specific facts demonstrating what trade secrets are at issue and why the requested documents from 4X Industrial are essential—as opposed to helpful—to a fair adjudication of Russell Marine's claim. Russell Marine does not direct us to any other evidence in the record sufficient to meet the burden required of a party seeking discovery of an opponent's trade secrets.

Finally, Russell Marine argues that the agreed confidentiality order is sufficient to protect 4X Industrial's trade secrets. However, Russell Marine must first show that it met its burden. *See In re Valero Ref.-Tex., LP*, 415 S.W.3d at 572 (holding that ability of protective order to limit harm from disclosure of trade secret becomes factor only if trade secrets are necessary and must be disclosed); *In re Hewlett Packard*, 212 S.W.3d 356, 364 (Tex. App.—Austin 2006, orig. proceeding [mand. denied]) ("That a trial court has ordered the parties to enter into a protective order with respect to trade secret information does not dispense with the requesting party's burden to establish the necessity for the discovery of the trade secret information to fairly adjudicate a claim or defense."); *In re Frost*, 998 S.W.2d 938, 939 (Tex. App.—Waco 1999, orig. proceeding) (holding trial court abused its discretion by ordering trade secrets disclosed even though such disclosure was subject to protective order). Because Russell Marine did not meet its burden under Rule 507, we do not address whether the parties' agreed protective order is sufficient to protect 4X Industrial's trade secrets.

## Conclusion

The trial court abused its discretion by ordering 4X Industrial to produce requests for production numbers 15-22 and 47-54.[4] 4X Industrial also does not have an adequate remedy by appeal. *See In re Dana Corp.*, 138 S.W.3d at 301; *In re Ford Motor Co.*, 988 S.W.2d at 721. We conditionally grant 4X Industrial's petition for

---

[4] In a second issue, 4X Industrial asserts that the discovery order is overbroad because it exceeds the issues at hand and encompasses every document related to every 4X Industrial project for Union Pacific and Kansas City. Given our disposition of 4X Industrial's first issue, we need not address 4X Industrial's contention that the order is overbroad.

writ of mandamus and direct the trial court to vacate its March 29, 2021 order to the extent that it compels 4X Industrial to produce documents in response to requests for production numbers 15-22 and 47-54. We are confident the trial court will act in accordance with this opinion and the writ will issue only if the court fails to do so. Our December 23, 2020 stay order is lifted.

/s/    Kevin Jewell
Justice

Panel consists of Justices Jewell, Poissant, and Wilson.